MARSHALL H. MARTIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Martin v. Commissioner
Docket No. 6240-93
United States Tax Court
T.C. Memo 1994-213; 1994 Tax Ct. Memo LEXIS 207; 67 T.C.M. (CCH) 2960; May 12, 1994, Filed *207 Decision will be entered for respondent in the amounts of $ 3,069.79 for 1989 and $ 3,329.92 for 1990. Marshall H. Martin, pro se. For respondent: Kenneth L. Bressler. GOLDBERG
GOLDBERG
MEMORANDUM OPINION GOLDBERG, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined that petitioner is liable for Federal excise taxes under section 4973(a) for taxable years 1989 and 1990, resulting in deficiencies of $ 3,915 and $ 3,570, respectively. The issue is whether funds in petitioner's individual retirement accounts (IRA) on December 31, 1989, and December 31, 1990, constitute "excess contributions" under section 4973(b). This case was submitted fully stipulated. All stipulated facts are found accordingly, and the attached exhibits are incorporated by reference. Petitioner resided *208 in Mesquite, Texas, at the time he filed his petition. Background
At the beginning of 1987, petitioner maintained an IRA with Shearson, Lehman, Hutton, and Co. (Hutton IRA). On February 5, 1987, at petitioner's request, Shearson, Lehman, Hutton, and Co. issued a check payable to him for the entire balance of the Hutton IRA, which was $ 111,615.57. On the same day, February 5, 1987, after endorsing the check described above, petitioner personally deposited the check at Merrill, Lynch, Pierce, Fenner, and Smith to open an IRA (Merrill Lynch IRA). A withdrawal was made on May 8, 1987, from the Merrill Lynch IRA in the amount of $ 164,596.13. On July 7, 1987, petitioner deposited $ 120,000 into the same Merrill Lynch IRA. Thereafter, on September 3, 1987, petitioner withdrew funds from the Merrill Lynch IRA in the amount of $ 10,000. The last transfer of funds in 1987 took place on December 7, when the entire balance in the Merrill Lynch IRA was transferred to an IRA with Charles Schwab and Co. (Charles Schwab IRA). On November 25, 1988, the balance in the Charles Schwab IRA was transferred to another IRA with Fidelity Investments (Fidelity IRA). [2]
*209 On December 31, 1988, the balance in petitioner's Fidelity IRA was $ 58,443; on December 31, 1989, the balance in the Fidelity IRA was $ 72,213.25. In June 1990, petitioner withdrew his funds from the Fidelity IRA, and on September 21, 1990, petitioner deposited $ 60,000 to the Charles Schwab IRA. The balance of the Charles Schwab IRA on December 31, 1990, was $ 61,498.62. Discussion
Section 4973 imposes a tax on excess contributions to individual retirement accounts. The question of whether funds in petitioner's Fidelity IRA and Charles Schwab IRA on December 31, 1989, and December 31, 1990, respectively, are excess contributions for purposes of section 4973 depends upon characterization of the transaction on February 5, 1987. If the February 5, 1987, transaction was a trustee-to-trustee transfer, as petitioner contends, the balances in his IRA's on December 31, 1989 and 1990, would not be excess contributions. However, if the February 5, 1987, transaction was a qualified rollover, as respondent argues, the IRA balances on December 31, 1989, and December 31, 1990 (less amounts for allowable IRA contribution deductions under section 219) are excess contributions under *210 section 4973(b). Petitioner's position is that the withdrawal from the Hutton IRA and subsequent deposit to the Merrill Lynch IRA on February 5, 1987, was a direct trustee-to-trustee transfer pursuant to Rev. Rul. 78-406, 1978-2 C.B. 157, and was not a qualified rollover under section 408(d)(3)(A)(i). Consequently, he contends that the withdrawal on May 8, 1987, and deposit on July 7, 1987, resulted in a qualified rollover of $ 120,000. Therefore, the trustee-to-trustee transfers on December 7, 1987, and November 25, 19 88, were not rollovers and were nontaxable events. Petitioner argues that the balances in his IRA's at the end of 1989 and 1990 were not the result of an excess contribution but instead were the remainder of funds deposited pursuant to a qualified rollover of $ 120,000 on July 7, 1987. Respondent's position is that the withdrawal and deposit on February 5, 1987, was a qualified rollover, exempt from taxation under section 408(d)(3)(A)(i). Since the rollover exemption can be used only once during any 1-year period, sec. 408(d)(3)(B), respondent argues that the $ 120,000 deposit on July 7, 1987, was not a qualified rollover, *211 but was an excess contribution to an IRA, a portion of which remained on deposit in the Fidelity IRA at the end of 1989 and in the Charles Schwab IRA at the end of 1990. The characterization of petitioner's February 5, 1987, transaction has already been decided by this Court in Martin v. Commissioner, T.C. Memo. 1992-331 (hereafter Martin I). Petitioner in the instant case was the litigant in Martin I. On February 22, 1993, the United States Court of Appeals for the Fifth Circuit, in an unpublished opinion, affirmed Martin I. In Martin I, we held that petitioner's February 5, 1987, transaction was not a trustee-to-trustee or direct transfer of funds, but rather was a qualified rollover of petitioner's IRA. Thus, his withdrawal of $ 164,596.13 on May 8, 1987, and another withdrawal of $ 10,000 on September 3, 1987, constituted taxable IRA distributions. A decision was entered in that case in favor of respondent on those taxable distributions. In Martin v. Commissioner, T.C. Memo. 1993-399 (Martin II), we considered, with respect to this petitioner for taxable year 1988, the same issue presented in the instant case. *212 In Martin II, we held that because of the excess contribution in 1987 (decided in Martin I), the section 4973 tax was applicable to petitioner's net IRA balance at the end of 1988, $ 58,443, less $ 2,000 for the allowable IRA contribution for that year under section 219. Sec. 4973(b)(2)(C). Thus, the excess contribution for 1988 was $ 56,443. Collateral estoppel serves the dual purpose of protecting litigants from the burden of relitigating an identical issue in a subsequent proceeding and of promoting judicial economy by preventing unnecessary or redundant litigation. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979); see Commissioner v. Sunnen, 333 U.S. 591, 597 (1948); Hardy v. Johns-Manville Sales Corp., 681 F.2d 334, 338 (5th Cir. 1982); Meier v. Commissioner, 91 T.C. 273, 282-283 (1988). Generally, the doctrine of collateral estoppel applies to prevent relitigation between the same parties of issues of law that were decided in an earlier proceeding on a different cause of action. Montana v. United States, 440 U.S. 147, 154-155 (1979); *213 Commissioner v. Sunnen, supra at 598; Peck v. Commissioner, 90 T.C. 162, 166-167 (1988), affd. 904 F.2d 525 (9th Cir. 1990). Collateral estoppel also applies to findings of fact that were actually litigated and decided in an earlier proceeding between the same parties and that were essential to the judgment entered in the earlier proceeding. Montana v. United States, supra at 153; Meza v. General Battery Corp., 908 F.2d 1262, 1273 (5th Cir. 1990); Meier v. Commissioner, supra at 282; Peck v. Commissioner, supra at 166. Therefore, we are bound by the holding in Martin I that petitioner's February 5, 1987, transaction resulted in a qualified rollover under section 408(d)(3). Because we held in Martin I that petitioner's February 5, 1987, withdrawal and deposit on the same day "was a nontaxable IRA rollover described in section 408(d)(3)", the doctrine of collateral estoppel applies against petitioner, and he cannot relitigate in this case the characterization *214 of the February 5, 1987, transaction. That transaction was held to be a qualified rollover, and we will not revisit that issue. [3]
Since the February 5, 1987, transaction was a rollover, the $ 120,000 contribution to the IRA on July 7, 1987, could not constitute a qualified rollover, as petitioner contends, because the contribution was made within 1 year of the previous February 5, 1987, rollover and, therefore, was not allowable under section 408(d)(3)(B). The $ 120,000 contribution on July 7, 1987, therefore, was an excess IRA contribution, a portion of which remained in petitioner's individual retirement accounts at the end of 1989 and 1990. As applicable here, section 4973(b) provides: For purposes of this section, in the case of individual retirement accounts * * * the term "excess contributions" means the sum of -- (1) the excess (if any) of -- (A) the *215 amount contributed for the taxable year to the accounts * * * (other than a rollover contribution * * *) over (B) the amount allowable as a deduction under section 219 for such contributions, and
(2) the amount determined under this subsection for the preceding taxable year, reduced by the sum of -- (A) the distributions out of the account for the taxable year which were included in the gross income of the payee under section 408(d)(1). (B) the distributions out of the account for the taxable year to which section 408(d)(5) applies, and (C) the excess (if any) of the maximum amount allowable as a deduction under section 219 for the taxable year over the amount contributed (determined without regard to section 219(f)(6)) to the accounts * * * for the taxable year.
Thus, under section 4973(a) there is imposed for each taxable year a tax in an amount equal to 6 percent of the amount of the excess contributions to individual retirement accounts. The amount of such tax for any taxable year shall not exceed 6 percent of the value of the account, determined as of the close of the taxable year. Section 4973(b) defines the term "excess contributions" as the sum *216 of (1) the excess of the amount contributed to the IRA for the taxable year (other than a rollover) over the amount allowable as a deduction under section 219 for such contribution, and (2) the amount determined under section 4973(b) for the preceding taxable year reduced by certain distributions and reduced by the excess of the amount allowable as a deduction under section 219 for the year over the amount actually contributed. The net balance of petitioner's Fidelity IRA at the end of 1989 was $ 72,213.25. [4] The net balance of the Charles Schwab IRA at the end of 1990 was $ 61,498.62. Petitioner was entitled to an IRA contribution deduction under section 219 in the amount of $ 2,000 for each applicable year; i.e., for 1988 and 1989 in the case of the Fidelity account and for 1988, 1989, and 1990 in the case of the Schwab account. With reductions to the yearend IRA balances for allowable section 219 contributions, as provided by section 4973(b)(2)(C), the excess contribution amounts for 1989 and 1990 are $ 68,213.25 and $ 55,498.62, respectively. *217 Therefore, we hold that petitioner is liable for an excise tax under section 4973 for 1989 and 1990 of 6 percent of the excess contributions of $ 68,213.25 and $ 55,498.62, respectively. [5] The excise tax due for 1989 is reduced by the tax reported on petitioner's 1989 tax return, $ 1,023. To reflect the foregoing, Decision will be entered for respondent in the amounts of $ 3,069.79 for *218 1989 and $ 3,329.92 for 1990.
Footnotes
1. All section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In the stipulation of facts, the parties have not characterized the Dec. 7, 1987, and Nov. 25, 1988, transfers, but we found in Martin v. Commissioner, T.C. Memo. 1993-399↩, that those transfers were nontaxable trustee-to-trustee transfers.
3. For completeness, we have considered petitioner's arguments with respect to the Feb. 5, 1987, transaction, and find them to be without merit.↩
4. The yearend balances and excess contribution amounts were stipulated by the parties. However, in his reply brief, petitioner contends that the correct ending balance for his IRA in 1989 was $ 58,562. He refers to "document 6" in support of this statement. Since there is no exhibit in evidence with that number, we assume petitioner is referring to the document attached to his reply brief that is so numbered. That document is a copy of an account statement for petitioner's Fidelity IRA for the period Dec. 1, 1988, through Jan. 31, 1989. This statement shows an account balance as of Jan. 1, 1989↩, of $ 58,562, and therefore does not reflect an ending balance for 1989, as asserted by petitioner.
5. We note that the sec. 4973 excise taxes determined in the notice of deficiency were $ 3,915 for 1989 and $ 3,570 for 1990, based upon respondent's determination that the taxable excess contributions were $ 70,213.25 for 1989 and $ 59,498.62 for 1990. Consistent with the parties' stipulation, we have found that the taxable excess contributions were $ 68,213.25 for 1989 and $ 55,498.62 for 1990. The difference is explained by respondent's concession that the year-end IRA balances should be reduced under sec. 4973(b)(2)(C)↩ by $ 4,000 for 1989 and $ 6,000 for 1990, to reflect allowable IRA contributions in 1988, 1989, and 1990.