T.C. Memo. 2014-21

UNITED STATES TAX COURT

ALVAN L. BOBROW AND ELISA S. BOBROW, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7022-11.                          Filed January 28, 2014.

Alvan L. Bobrow and Elisa S. Bobrow, pro sese.

Thomas A. Deamus, for respondent.

MEMORANDUM OPINION

NEGA, Judge: Respondent determined a deficiency in petitioners' income

tax for taxable year 2008 of $51,298 and an accuracy-related penalty under section

6662[1] of $10,260. Respondent mailed a notice of deficiency to petitioners, and

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the year at issue, and all Rule references are to the Tax
(continued...)

**[*2]** petitioners timely filed a petition in this Court.  Petitioners were married and resided in Short Hills, New Jersey, at the time they filed their petition.

The following issues are presented to the Court:

(1) whether petitioners received taxable income from the April 14, 2008, distribution from petitioner husband's traditional IRA;

(2) whether petitioners received taxable income from the June 10, 2008, distribution from petitioner husband's rollover IRA;

(3) whether petitioners received taxable income from the July 31, 2008, distribution from petitioner wife's traditional IRA;

(4) whether petitioners are liable for an additional tax on early distributions from retirement plans under section 72(t) of 10% of the amount of the distribution from petitioner wife's traditional IRA; and

(5) whether petitioners are liable for the section 6662(a) accuracy-related penalty by reason of any substantial understatement of income tax or negligence or disregard of rules or regulations.

---

[1](...continued)
Court Rules of Practice and Procedure.  All monetary amounts are rounded to the nearest dollar.

**[*3]**                              Background

This case was submitted on the pleadings and stipulated facts under Rule 122. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Alvan L. Bobrow (petitioner husband) was born in 1949 and is an attorney specializing in tax law. Elisa S. Bobrow (petitioner wife) was born in 1951. Petitioners maintained various accounts at Fidelity Investments during 2008. As relevant to this case, petitioner husband maintained two individual retirement accounts (IRAs), a Fidelity Funds traditional IRA (petitioner husband's traditional IRA) and a Fidelity rollover IRA (petitioner husband's rollover IRA). Petitioner wife also maintained a Fidelity Funds traditional IRA (petitioner wife's traditional IRA). In addition to their IRAs, petitioners maintained a joint Fidelity checking account (petitioners' joint account). Petitioner husband also maintained an individual Fidelity checking account (petitioner husband's individual account).

On April 14, 2008, petitioner husband requested and received two distributions from petitioner husband's traditional IRA in the combined amount of $65,064. On June 6, 2008, petitioner husband requested and received a $65,064 distribution from petitioner husband's rollover IRA. On June 10, 2008, petitioner husband transferred $65,064 from petitioner husband's individual account to

**[*4]** petitioner husband's traditional IRA. On July 31, 2008, petitioner wife requested and received a $65,064 distribution from petitioner wife's traditional IRA. On August 4, 2008, petitioners transferred $65,064 from petitioners' joint account to petitioner husband's rollover IRA. On September 30, 2008, petitioner wife transferred $40,000 from petitioners' joint account to petitioner wife's traditional IRA.

Petitioners and respondent dispute the effective date and amount of the repayment to petitioner wife's traditional IRA. Respondent asserts that the repayment was only a partial repayment of funds totaling $40,000 and that these funds were not repaid within 60 days. Petitioners assert that the full amount of the $65,064 early distribution from petitioner wife's traditional IRA was effectively repaid within 60 days because petitioner wife requested that Fidelity transfer $65,064 from petitioners' joint account to petitioner wife's traditional IRA at some time before September 30, 2008. Petitioners have not presented any evidence to show that the full amount of $65,064 was transferred to petitioner wife's traditional IRA before September 30, 2008. A Fidelity Investment Report for petitioner wife's traditional IRA shows that two checks totaling $40,000 were received and deposited into petitioner wife's traditional IRA on September 30, 2008. Petitioners have not provided any evidence that (1) they requested a

[*5] transfer of $65,064 from Fidelity before September 30, 2008, or (2) the delayed underpayment of $40,000 was due to Fidelity's error.

Petitioners and respondent characterize the foregoing distributions and repayments very differently. Petitioners characterize the distributions and repayments as three sets of two transactions, each involving a distribution from an IRA followed by a qualified repayment of those funds. The following table summarizes petitioners' characterization of the 2008 transactions:

| -- | Distribution | Repayment |
|---|---|---|
| Transaction 1 | Apr. 14, 2008, distribution from petitioner husband's traditional IRA | June 10, 2008, qualified repayment from petitioner husband's individual account to petitioner husband's traditional IRA |
| Transaction 2 | June 6, 2008, distribution from petitioner husband's rollover IRA | Aug. 4, 2008, qualified repayment from petitioners' joint account to petitioner husband's rollover IRA |
| Transaction 3 | July 31, 2008, distribution from petitioner wife's traditional IRA | Pre-Sep. 30, 2008, qualified repayment from petitioners' joint account to petitioner wife's traditional IRA |

Respondent disputes petitioners' characterization of the distributions and repayments and characterizes them as follows:

| [*6]   -- | Distribution | Repayment |
|---|---|---|
| Transaction 1 | Apr. 14, 2008, distribution from petitioner husband's traditional IRA | No repayment or Aug. 4, 2008, unqualified repayment from petitioners' joint account to petitioner husband's Rollover IRA[1] |
| Transaction 2 | June 6, 2008, distribution from petitioner husband's rollover IRA | June 10, 2008, qualified repayment from petitioner husband's individual account to petitioner husband's traditional IRA |
| Transaction 3 | July 31, 2008, distribution from petitioner wife's traditional IRA | Sep. 30, 2008, unqualified partial repayment from petitioners' joint account to petitioner wife's traditional IRA |

[1]Respondent first argued on opening brief that there was no repayment of the Apr. 14, 2008, distribution, but later argued on reply brief that there was a repayment of that distribution on Aug. 4, 2008, that was not a qualified rollover contribution because the repayment was made within one year of the June 6, 2008, distribution.  Respondent asserts that the June 6, 2008, distribution was a valid nontaxable rollover contribution under sec. 408(d)(3)(A) and the Apr. 14, 2008, distribution is invalid under the sec. 408(d)(3)(B) limitation.

## Discussion

### I.    Burden of Proof

Respondent's determination as to petitioners' tax liability is presumed correct, and petitioners bear the burden of proving otherwise.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Section 61(a) generally requires

**[*7]** taxpayers to include in gross income all income from whatever source derived. Exclusions from income are to be narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 328 (1995). Deductions are a matter of legislative grace. Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers must comply with specific requirements for any deductions claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. at 440. Taxpayers must also maintain adequate records to substantiate the amounts of any credits and deductions. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

## II. Rollover Contributions

Section 408(d) governs distributions from qualified retirement plans. Generally, section 408(d)(1) provides that any amount distributed from an individual retirement plan[2] is includible in gross income by the payee or distributee. Section 408(d)(3)(A) allows a payee or distributee of an IRA distribution to exclude from gross income any amount paid or distributed from an IRA if the entire amount is subsequently paid into a qualifying IRA, individual

---

[2]Sec. 408(d)(3) governs distributions from IRAs and individual retirement annuities. We use "IRA" throughout to refer to petitioners' IRAs, though the term would be equally applicable to individual retirement annuities if petitioners had any such annuities.

**[\*8]** retirement annuity, or retirement plan not later than the 60th day after the day on which the payee or distributee receives the distribution. Sec. 408(d)(3)(A)(i) and (ii); see also Schoof v. Commissioner, 110 T.C. 1, 7 (1998). Such distributions and repayments are commonly referred to as "rollover contributions". Sec. 408(d)(3). Taxpayers may also make partial rollover contributions of less than the full amount of a distribution from an IRA if any portion of those funds is paid into a qualifying retirement plan not later than the 60th day after the day of receipt of the distribution. Sec. 408(d)(3)(D).

Section 408(d)(3)(B) limits a taxpayer from performing more than one nontaxable rollover in a one-year period with regard to IRAs and individual retirement annuities. Specifically, section 408(d)(3)(B) provides:

> This paragraph [regarding tax-free rollovers] does not apply to any amount described in subparagraph (A)(i) received by an individual from an individual retirement account or individual retirement annuity if at any time during the 1-year period ending on the day of such receipt such individual received any other amount described in that subparagraph from an individual retirement account or an individual retirement annuity which was not includible in his gross income because of the application of this paragraph.

The reference to "any amount described in subparagraph (A)(i)" refers to any amount characterized as a nontaxable rollover contribution by virtue of that amount's being repaid into a qualified plan within 60 days of distribution from an

[*9] IRA or individual retirement annuity. The one-year limitation period begins on the date on which a taxpayer withdraws funds from an IRA or individual retirement annuity and has no relation to the calendar year. Thus, for example, a taxpayer may not make a nontaxable rollover on December 31 in one calendar year and make another nontaxable rollover on January 1 in the next calendar year.

III.   April 14 and June 6, 2008, Distributions

Petitioners assert that the section 408(d)(3)(B) limitation is specific to each IRA maintained by a taxpayer and does not apply across all of a taxpayer's IRAs. Therefore, petitioners argue that section 408(d)(3)(B) does not bar nontaxable treatment of the distributions made from petitioner husband's traditional IRA and petitioner husband's rollover IRA. Petitioners do not cite any supporting caselaw or statutes that would support their position. Instead, petitioners cite Tech. Adv. Mem. 9010007 (Dec. 14, 1989)[3] and Zaklama v. Commissioner, T.C. Memo. 2012-346 for the position that a taxpayer's use of funds between the time he takes a distribution from an IRA and the time he makes a repayment of the funds is irrelevant to determining whether the transaction qualifies as a rollover

---

[3]Even if Tech. Adv. Mem. 9010007 (Dec. 14, 1989), supported petitioners' argument regarding the taxable nature of both distributions, technical advice memoranda may not be used or cited as precedent and are afforded little weight in this Court. See sec. 6110(k)(3); Textron Inc. v. Commissioner, 115 T.C. 104, 112 n.12 (2000), rev'd on other grounds, 336 F.3d 26 (1st Cir. 2003).

**[*10]** contribution. While we agree with petitioners that the use of funds is irrelevant where the funds include only money and no other distinguishable property, neither Tech. Adv. Mem. 9010007 nor Zaklama bears any relevance to petitioners' argument that a taxpayer may make more than one tax-free rollover contribution per year.

Respondent asserts that Martin v. Commissioner, T.C. Memo. 1992-331, 63 T.C.M. (CCH) 3122 (1992) (Martin I), aff'd, 987 F.2d 770 (5th Cir. 1993), and Martin v. Commissioner, T.C. Memo. 1994-213 (Martin III), govern this case.[4] In the Martin cases, the taxpayer withdrew funds from an IRA (IRA 1) and deposited them into a second IRA (IRA 2). Martin I, 63 T.C.M. (CCH) at 3122-3123.

---

[4]Respondent first raised the Martin cases in his reply brief, a courtesy copy of which respondent provided to petitioners several days before the due date for the parties' filings. In their reply brief petitioners objected to the introduction of the theory, based on the Martin cases, that the sec. 408(d)(3)(A)(i) rollover exemption can be used only once during any one-year period. Petitioners argued that respondent had waived this argument by failing to raise it in his opening brief. Petitioners concurrently filed with their reply brief a motion for leave to file sur-reply to respondent's reply brief. In their sur-reply petitioners again objected to respondent's argument based on the Martin cases and argued that Rule 151 prohibits a party from raising new, alternative arguments in its reply brief.

Respondent is not barred from relying on the Martin cases, nor do these cases constitute a new matter affecting the allocation of the burden of proof under Rule 142. These cases merely clarify and develop respondent's prior determination that one of petitioner husband's IRA distributions is taxable. Further, respondent's reliance on the Martin cases does not alter the original deficiency or require the presentation of different evidence.

[*11] Within one year of the first withdrawal, the taxpayer made two separate withdrawals from IRA 2 and redeposited those funds into IRA 2. Id. at 3123. This Court held that the two later withdrawals from IRA 2 were not eligible to be nontaxable rollovers because section 408(d)(3)(B) limits taxpayers to one nontaxable rollover per year: "Section 408(d)(3)(B) provides that the section 408(d)(3)(A)(i) rollover exemption can only be used once during any 1-year period. Thus, all subsequent distributions received during the year are taxable under section 408(d)(1)." Id. Since the taxpayer in the Martin cases had used the section 408(d)(3)(A)(i) rollover exemption when he transferred funds from IRA 1 to IRA 2, he could not avail himself of the exemption when he subsequently withdrew funds from IRA 2.

Petitioners disagree with respondent's interpretation of the Martin cases. Petitioners argue that Martin I and Martin III apply only to the situation where a taxpayer takes multiple distributions from one IRA and not to the present situation in which petitioner husband took a single distribution from each IRA he maintained. Essentially, petitioners argue that section 408(d)(3)(B) prohibits taxpayers only from taking multiple distributions from the same IRA within one year. As petitioners interpret section 408(d)(3)(B), a taxpayer may elect the

**[*12]** section 408(d)(3)(A)(i) exemption yearly with regard to each IRA he or she maintains.

Petitioners' interpretation is incorrect and not in line with this Court's previous opinions regarding section 408(d)(3)(B), the plain language of section 408(d)(3)(B), or the legislative history of section 408. See Martin v. Commissioner, T.C. Memo. 1992-331; Martin v. Commissioner, T.C. Memo. 1994-213; see also Bhattacharyya v. Commissioner, T.C. Memo. 2007-19 ("Exclusion of a rollover from one IRA to another can only be made by an individual once during any 1-year period.").

The plain language of section 408(d)(3)(B) limits the frequency with which a taxpayer may elect to make a nontaxable rollover contribution. By its terms, the one-year limitation laid out in section 408(d)(3)(B) is not specific to any single IRA maintained by an individual but instead applies to all IRAs maintained by a taxpayer. Section 408(d)(3)(B) speaks in general terms: An individual may not receive a nontaxable rollover from "an individual retirement account or individual retirement annuity" if that individual has already received a tax-free rollover within the past year from "an individual retirement account or an individual retirement annuity." (Emphasis added.) In other words, a taxpayer who maintains

**[*13]** multiple IRAs may not make a rollover contribution from each IRA within

one year.[5]

Section 408 was enacted as part of the Employee Retirement Income

Security Act of 1974, Pub. L. No. 93-406, sec. 2002(b), 88 Stat. at 958.

Recognizing that the American workforce had become much more mobile than in

previous years, Congress enacted the section 408(d)(3)(A) exemption as a way of

providing employees with some measure of flexibility with regard to their

retirement planning. However, Congress added the section 408(d)(3)(B)

limitation as a way to ensure that taxpayers did not take advantage of section

408(d)(3)(A) to repeatedly shift nontaxable income in and out of retirement

accounts. See, e.g., H.R. Rept. No. 93-779, at 139 (1974), 1974-3 C.B. 244, 382

("To prevent too much shifting of investments under * * * [section

408(d)(3)(A)(i)], the bill provides that an individual can transfer amounts between

---

[5]Taxpayers who maintain more than one IRA may make multiple direct rollovers from the trustee of one IRA to the trustee of another IRA without triggering the sec. 408(d)(3)(B) limitation. See Rev. Rul. 78-406, 1978-2 C.B. 157. Transferring funds directly between trustees does not result in a "distribution" within the meaning of sec. 408(d)(3)(A). Since such funds are not within the direct control and use of the participant, they are not considered to be "rollover contributions". Id.

[*14] individual retirement accounts only once every three years.");[6] H.R. Conf. Rept. No. 93-1280, at 342 (1974), 1974-3 C.B. 415, 503 ("Tax-free rollovers between individual retirement accounts may occur only once every three years.").

As we previously noted, section 408(d)(3)(B) applies a one-year waiting period for individuals who have received a nontaxable distribution from "an individual retirement account or individual retirement annuity". Had Congress intended to allow individuals to take nontaxable distributions from multiple IRAs per year, we believe section 408(d)(3)(B) would have been worded differently. Our conclusion is confirmed by the legislative history, which also refers to the limitation as a general limitation that applies across all of a taxpayer's retirement accounts. Accordingly, we conclude, as we have in prior opinions, that the section 408(d)(3)(B) limitation applies to all of a taxpayer's retirement accounts. Regardless of how many IRAs he or she maintains, a taxpayer may make only one nontaxable rollover contribution within each one-year period.

As a result, in the one-year period beginning on April 14, 2008, petitioner husband can have completed only one distribution and repayment as a nontaxable rollover contribution under section 408(d)(3)(A)(i). Any other distribution is

---

[6]Sec. 408(d)(3)(B) originally imposed a three-year limitations period. Congress reduced the limitation from three years to one year in 1978. See Revenue Act of 1978, Pub. L. No. 95-600, sec. 157(h)(2), 92 Stat. at 2808.

[*15] subject to the limitation in section 408(d)(3)(B) and is includible in petitioners' gross income.

Whether a distribution qualifies for rollover treatment under section 408(d)(3)(A) can be determined only by reference to the 60-day period within which a taxpayer must repay the distribution to an eligible retirement account or annuity. Petitioners and respondent agree that the June 10, 2008, transfer to petitioner husband's traditional IRA was made within 60 days of both the April 14, 2008, distribution from petitioner husband's traditional IRA and the June 6, 2008, distribution from petitioner husband's rollover IRA, but they disagree as to which distribution the transfer applies to.[7][8] When petitioner husband withdrew funds from his rollover IRA on June 6, 2008, the taxable treatment of his April 14,

[7]Both petitioners and respondent characterize the April 14, 2008, withdrawals as one singular distribution for purposes of sec. 408(d)(3)(A). It appears petitioner husband requested two separate distributions from his traditional IRA in order to draw from two separate funds within that IRA. We think it would be inappropriate to read the sec. 408(d)(3)(B) limitation on multiple distributions so narrowly as to disqualify one of the April 14, 2008, distributions as nontaxable under sec. 408(d)(3)(A). Accordingly, we treat the amounts distributed on April 14, 2008, as one distribution for purposes of sec. 408(d)(3)(A).

[8]Since both the April 14, 2008, distribution and the June 6, 2008, distribution totaled $65,064, it is mathematically irrelevant which distribution receives nontaxable treatment. We nevertheless decide which distribution receives nontaxable treatment because that distribution begins the operative one-year period for purposes of the sec. 408(d)(3)(B) annual limitation.

**[*16]** 2008, withdrawal from his traditional IRA was still unresolved since he had not yet repaid those funds. However, by recontributing funds on June 10, 2008, to his traditional IRA, petitioner husband satisfied the requirements of section 408(d)(3)(A) for a nontaxable rollover contribution, and the April 14, 2008, distribution is therefore not includible in petitioners' gross income. Thus, petitioner husband had already received a nontaxable distribution from his traditional IRA on April 14, 2008, when he received a subsequent distribution from his rollover IRA on June 6, 2008. Section 408(d)(3)(B) disallows nontaxable treatment for this second distribution under section 408(d)(3)(A). As a result, the June 6, 2008, distribution from petitioner husband's rollover IRA is fully includible in petitioners' gross income for taxable year 2008.

IV.    July 31, 2008, Distribution

As previously discussed, section 408(d)(3)(A) provides for nontaxable treatment of rollover contributions provided that a distribution from a retirement account "is paid into an individual retirement account or individual retirement annuity * * * for the benefit of such individual not later than the 60th day after the day on which he receives the payment or distribution". Respondent puts forth two arguments as to why the July 31, 2008, distribution is ineligible for nontaxable rollover treatment: (1) the funds were not returned to a retirement account

**[*17]** maintained for the benefit of petitioner wife, and (2) repayment of funds was not made within 60 days. Respondent asserts that because petitioner wife distributed the funds first to petitioners' joint account and petitioners thereafter transferred $65,064 from their joint account to petitioner husband's rollover IRA, the July 31, 2008, distribution was paid into an IRA set up for petitioner husband's benefit and not into an IRA set up for petitioner wife's benefit. However, as petitioners point out and we agree, money is fungible, and the use of funds distributed from an IRA during the 60-day period is irrelevant to the determination of whether the distribution is a nontaxable rollover contribution. See Zaklama v. Commissioner, T.C. Memo. 2012-346. Thus, we reject respondent's first argument regarding the July 31, 2008, distribution. However, we sustain respondent's second argument concerning the July 31, 2008, distribution from petitioner wife's traditional IRA. Partial repayment was not made until September 30, 2008. Sixty days after July 31, 2008, is September 29, 2008, and the September 30, 2008, partial repayment was made after the expiration of the 60-day period. Therefore, the July 31, 2008, distribution and September 30, 2008, partial repayment do not meet the strict requirements of section 408(d)(3)(A).

Petitioners do not dispute that the partial repayment of $40,000 to petitioner wife's traditional IRA was made on September 30, 2008, the 61st day after the

**[*18]** July 31, 2008, distribution of $65,064 from petitioner wife's traditional IRA. However, petitioners contend that the entire amount of $65,064 should be given nontaxable treatment under section 408(d)(3)(A) since petitioner wife requested that Fidelity transfer $65,064 from petitioners' joint account to petitioner wife's traditional IRA "[s]ometime before September 30, 2008." Petitioners assert that the funds were not repaid within 60 days because of delays by Fidelity. Petitioners have not provided any supporting documentation to evidence that the delay in repayment was due to Fidelity's error.

Section 408(d)(3)(I) provides that the 60-day requirement for redepositing funds into an IRA may be waived by the Secretary "where the failure to waive such requirement would be against equity or good conscience, including casualty, disaster, or other events beyond the reasonable control of the individual subject to such requirement."

In Wood v. Commissioner, 93 T.C. 114 (1989), the taxpayer's financial institution made a bookkeeping error that resulted in the taxpayer's rollover contribution's not being transferred to the taxpayer's new IRA within 60 days of the distribution. The taxpayer took every reasonable step to ensure the funds were transferred within 60 days. Id. at 122. We held the bookkeeping error should not

[*19] preclude nontaxable treatment because the taxpayer had complied with the substance of the statutory requirements. Id. at 122-123.

Rev. Proc. 2003-16, 2003-1 C.B. 359, provides guidance to taxpayers seeking waiver of the 60-day requirement, including two methods by which taxpayers may have the requirement waived. Taxpayers may either (1) apply for a hardship exception or (2) receive automatic approval under certain circumstances. Rev. Proc. 2003-16, sec. 3.03, 2003-1 C.B. at 360, provides in relevant part the following:

> No application to the Service is required if a financial institution receives funds on behalf of a taxpayer prior to the expiration of the 60-day rollover period, the taxpayer follows all procedures required by the financial institution for depositing the funds into an eligible retirement plan within the 60-day period (including giving instructions to deposit the funds into an eligible retirement plan) and, solely due to an error on the part of the financial institution, the funds are not deposited into an eligible retirement plan within the 60-day rollover period. Automatic approval is granted only: (1) if the funds are deposited into an eligible retirement plan within 1 year from the beginning of the 60-day rollover period; and (2) if the financial institution had deposited the funds as instructed, it would have been a valid rollover.

Rev. Proc. 2003-16, sec. 3.02, 2003-1 C.B. at 359, also allows taxpayers to apply for a hardship exception where the delay in repayment was caused by "errors committed by a financial institution, other than as described in Section 3.03".

**[\*20]**  Petitioner wife has not shown that she meets the requirements for automatic waiver of the 60-day requirement under Rev. Proc. 2003-16, sec. 3.03. Petitioners have not provided any evidence to show that before September 30, 2008, petitioner wife followed "all procedures required by the financial institution for depositing the funds into an eligible retirement plan within the 60-day period". Further, petitioners have not provided any documentation that would satisfy the second requirement for an automatic waiver under Rev. Proc. 2003-16, supra, namely that had Fidelity, the financial institution in this case, "deposited the funds as instructed, it would have been a valid rollover".  Petitioner wife has also not provided any evidence that she applied for a hardship waiver under Rev. Proc. 2003-16, sec. 3.02.

In the absence of any evidence supporting petitioners' contention that petitioner wife requested repayment of the July 31, 2008, distribution within the 60-day period, petitioner wife has not proved that she qualifies for a waiver of the section 408(d)(3)(A) 60-day requirement for rollover contributions.  Since petitioner wife did not redeposit funds withdrawn from her traditional IRA within 60 days, the full amount of those funds, $65,064, is includible in petitioners' gross income for taxable year 2008.

[*21] V.     Section 72(t) Additional Tax on Early Distribution

Section 72(t)(1) imposes a 10% additional tax on a taxpayer who receives an early distribution from a qualified retirement plan, unless such taxpayer satisfies one of the exemptions found in section 72(t)(2).  In particular, section 72(t)(2)(A)(i) provides an exemption for taxpayers who have attained age 59½. Respondent determined and we have found that petitioner wife received an early distribution from her traditional IRA, a qualified retirement plan for purposes of section 72(t).  See sec. 4974(c)(4).  Petitioner wife had not attained age 59½ at the time of the July 31, 2008, distribution.  Petitioner wife has not shown that she qualifies for any of the other exemptions in section 72(t)(2).  See Phillips v. Commissioner, T.C. Memo. 2013-42.  Therefore, petitioners are liable for the additional 10% tax on the early distribution of $65,064 from petitioner wife's traditional IRA.

VI.     Section 6662(a) Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes a penalty equal to 20% of any portion of an underpayment that is attributable to, inter alia, negligence or disregard of rules or regulations, or any substantial understatement of income tax. Because we find that there was an underpayment attributable to a substantial understatement of income tax under section 6662(a), we do not need to determine

[*22] whether such underpayment was attributable to negligence or disregard of the rules or regulations.

Section 6662(d)(1) defines a substantial understatement as an understatement that exceeds the greater of 10% of the tax required to be shown on the return for the taxable year or $5,000. Section 6662(d)(2)(A) defines "understatement" as the excess of the amount of tax required to be shown on the return for the taxable year over the amount of tax imposed which is shown on the return.

Generally, the Commissioner bears the burden of production with respect to any penalty, including the accuracy-related penalty. Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001). To meet that burden, the Commissioner must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty. Higbee v. Commissioner, 116 T.C. at 446. However, once the Commissioner has met the burden of production, the burden of proof remains with the taxpayer, including the burden of proving that the penalty is inappropriate because of substantial authority or reasonable cause under section 6664. See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-449.

Since the July 6, 2008, distribution from petitioner husband's rollover IRA and the July 31, 2008, distribution from petitioner wife's traditional IRA are fully

[*23] includible in petitioners' income for taxable year 2008, petitioners should have reported a total tax of $139,526. Petitioners reported tax on their 2008 Form 1040, U.S. Individual Income Tax Return, of $88,228. The understatement of tax is equal to the difference between the two amounts, or $51,298. The understatement of $51,298 exceeds 10% of the tax required to be shown on the return for the taxable year, $13,953, which is greater than $5,000. Thus, the understatement is substantial for purposes of the section 6662(a) accuracy-related penalty. We conclude that respondent met his burden of production in showing that petitioners substantially understated their income tax for the 2008 taxable year.

Section 6662(d)(2)(B) reduces the amount of the understatement determined under section 6662(d)(2)(A) if the taxpayer can show either (i) there was substantial authority for the taxpayer's treatment of an item to which the understatement is attributable or (ii) the taxpayer disclosed the relevant facts in his or her return and there was a reasonable basis for the tax treatment of the item. We address each of these requirements in turn.

The substantial authority standard under section 6662(d)(2)(B)(i) is "an objective standard involving an analysis of the law and application of the law to relevant facts." Lawinger v. Commissioner, 103 T.C. 428, 440 n.8 (1994).

[*24] Substantial authority exists only when the weight of the authorities supporting the treatment of the tax item is substantial in relation to the weight of the authorities supporting contrary treatment. Sec. 1.6662-4(d)(3)(i), Income Tax Regs. If there is substantial authority for the tax treatment of an item, the tax attributable to the item is not included in the calculation of the understatement under section 6662(d). Sec. 1.6662-4(d)(1), Income Tax Regs. The taxpayer bears the burden of proving that substantial authority or reasonable cause supports the position taken in the taxpayer's return. Higbee v. Commissioner, 116 T.C. at 446.

Petitioners cite no authority supporting their position that the section 408(d)(3)(B) limitation applies separately to each IRA maintained by a taxpayer and not, as respondent argues and we agree, that the limitation applies across all IRAs maintained by a taxpayer. Petitioners merely assert that Martin I and Martin III do not apply to the present case since the taxpayer in that case made multiple withdrawals from the same IRA. Petitioners do not cite any authority from the Court or any other authority that would distinguish the Martin cases from the issue presented before the Court. Accordingly, petitioners have not met their burden of proving that the weight of the authorities supporting the treatment of the IRA

[*25] distributions is substantial in relation to the weight of the authorities supporting contrary treatment.

Alternatively, a taxpayer is entitled to a reduction of the section 6662(d)(2)(A) understatement if the taxpayer can show that he or she disclosed the relevant facts in his or her return and there was a reasonable basis for the taxpayer's position. Sec. 6662(d)(2)(B)(ii)(I) and (II). Disclosure of an item is adequate if disclosure is made on the taxpayer's income tax return or a properly completed form attached to the taxpayer's return or is made on an a qualified amended return. Sec. 1.6662-4(f)(1) and (2), Income Tax Regs. Respondent asserts that petitioners have failed to satisfy this requirement as they did not report income from the distributions on their return or a properly completed form attached to the return. An analysis of petitioners' 2008 Form 1040 confirms that they reported no taxable income from the 2008 distributions. Petitioners did not disclose in their return relevant facts concerning the distributions. Accordingly, they fail the first requirement of the section 6662(d)(2)(B)(ii) exception, and we need not analyze whether petitioners had a reasonable basis for their position.

Section 6664(c)(1) provides another method by which petitioners may avoid the section 6662(a) penalty: no penalty shall be imposed under section 6662 with regard to any portion of an underpayment if it can be shown that there was

[*26] reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. In contrast to the objective standard for determining substantial authority, the test as to a taxpayer's reasonable cause and good faith is a subjective one that considers the taxpayer's background. Id. In particular, section 1.6664-4(b)(1), Income Tax Regs., provides that reasonable cause and good faith may be present where there is "an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Petitioners bear the burden of proving reasonable cause for their position and that they acted in good faith. See Rule 142.

Petitioner husband is an attorney specializing in tax law, a fact which petitioners state several times throughout their briefs as support for the position taken on their 2008 tax return. In support of their argument that section 6664(c) should negate any penalty assessed under section 6662(a), petitioners assert that petitioner husband "analyzed the transactions at issue in the light of the provisions of section 408(d)(3), and concluded that the three transactions should all be treated as nontaxable." It appears that petitioners would have us conclude that petitioner

[*27] husband's career as a tax attorney is proof that they acted with reasonable cause and in good faith.  The Court has previously held that a taxpayer's substantial knowledge of tax law is a factor to be considered in evaluating a taxpayer's reasonable cause and good faith efforts under section 6664(c)(1).  In Argyle v. Commissioner, T.C. Memo. 2009-218, 98 T.C.M. (CCH) 259, 263-264 (2009), aff'd, 397 Fed. Appx. 823 (3d Cir. 2010), we sustained the section 6662(a) penalty against a certified public accountant who held a master's degree in accounting with a major in tax, stating: "Petitioner's training and experience are relevant factors in considering whether he is liable for the penalty."  See also Reynolds v. Commissioner, 296 F.3d 607, 618 (2001) ("Here, the 'experience, knowledge and education' proviso is fatal for * * * [taxpayer], who is a licensed attorney, certified public accountant and IRS audit supervisor."), aff'g T.C. Memo. 2000-20.

As we previously noted, petitioners cite no authority for the position that the section 408(d)(3)(B) limitation on nontaxable distributions applies only to withdrawals from the same IRA.  Petitioners cite only petitioner husband's expertise as an attorney specializing in tax law and "representations by Fidelity" concerning the structure of the transactions.  Petitioners have not produced any

[*28] documentation that would show a reliance on statements made by Fidelity[9] to evidence that they acted with reasonable cause and in good faith.  Further, petitioners' statement that petitioner husband analyzed the transactions "in the light of the provisions of section 408(d)(3)" leads us to the conclusion that petitioner husband must have read the plain language of the limitation in section 408(d)(3)(B) and therefore been put on notice that the multiple distributions from petitioner husband's IRA accounts violate that limitation.  Petitioners have thus not met their burden of proof with respect to section 6664(c), and we sustain the section 6662(a) accuracy-related penalty.

To reflect the foregoing,

Decision will be entered under Rule 155.

---

[9]Proof of such representations would not necessarily resolve the issue in petitioners' favor.  Sec. 1.6664-4(b)(1), Income Tax Regs., provides that "[r]eliance on an information return or on the advice of a professional tax advisor or an appraiser does not necessarily demonstrate reasonable cause and good faith."