Stephen J. JOHNSON, Appellant

v.

COMMISSIONER of INTERNAL
REVENUE SERVICE,
Appellee.

No. 11–1298.

United States Court of Appeals,
District of Columbia Circuit.

Jan. 29, 2013.

Marshall Jay Gluck, Babcock MacLean, Lawrence Steven Hirsh, Robinson, Brog, Leinwand, Greene, Genovese & Gluck, PC, New York, NY, for Appellant.

Anthony Thomas Sheehan, Michael J. Haungs, Sara Ann Ketchum, Gilbert Steven Rothenberg, Esquire, U.S. Department of Justice, William J. Wilkins, Internal Revenue Service (IRS) Office of Chief Counsel, Washington, DC, for Appellee.

Before: SENTELLE, Chief Judge, HENDERSON and GRIFFITH, Circuit Judges.

### *JUDGMENT*

PER CURIAM.

This case is before us on appeal from a decision of the Tax Court sustaining an order of the Commissioner of Internal Revenue collecting taxes incurred by Stephen J. Johnson in 1999 and 2000. *See Johnson v. Comm'r*, 136 T.C. 475 (2011). The issues were briefed and argued by the parties on November 9, 2012. The Court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). It is

**ORDERED AND ADJUDGED** that the Tax Court's June 3, 2011, decision sustaining the Commissioner of Internal Revenue's order is affirmed.

As a consequence of refusing to pay tax debt incurred for the years 1999 and 2000, Johnson owes the government over two million dollars. He does not dispute the existence of his debt. Instead, he challenges the IRS's decision to decline various compromise offers he made. He also argues that the IRS effectively backed out of a settlement it had already accepted. Finally, he argues that the IRS Office of Appeals violated the requirement to "take into consideration ... whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." 26 U.S.C. § 6330(c)(3).

We review decisions of the Tax Court "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." 26 U.S.C. § 7482(a)(1). Thus, we apply de novo review to the Tax Court's determinations of law. *See Andantech L.L.C. v. Comm'r*, 331 F.3d 972, 976 (D.C.Cir.2003).

This leads us to scrutinize the IRS's underlying order for abuse of discretion. *See Tucker v. Comm'r*, 676 F.3d 1129, 1131, 1135–37 (D.C.Cir.2012). In this case, we determine that the Tax Court was correct: the IRS did not abuse its discretion when rejecting Johnson's compromise offers; the IRS did not abuse its discretion by backing out of any already-accepted settlement deal; and the IRS did not violate 26 U.S.C. § 6330(c)(3). We therefore affirm the decision of the Tax Court sustaining the underlying order.

■ The IRS was well within its discretion to reject Johnson's offers-in-compromise. *See* Treas. Reg. § 301.7122–1 (authorizing the Commissioner of Internal Revenue to enter compromises); Rev. Proc. 2003–71, § 4.02(2) (discussing offers-in-compromise). The IRS Office of Appeals reasonably calculated that Johnson could have paid more money than he was offering to pay. In particular, the IRS staff properly included over $200,000 as "dissipated assets" in its estimation of Johnson's "reasonable collection potential." *See* I.R.M. pt. 5.8.5.5 (2008). Johnson had received this money through distributions from various investment companies in which he participated, but he did not pay the money to the IRS. The IRS properly considered the money to be "dissipated" because Johnson failed to "provide information showing the disposition" of it—a clear reason, under the Internal Revenue Manual, to characterize assets as "dissipated." *See id.* To the extent that a portion of this money *was* accounted for, the IRS properly determined that Johnson spent it "with a disregard" for outstanding tax liability. *See Tucker*, 676 F.3d at 1136.

The IRS also was well within its discretion when it refused to treat the $3,000 monthly payments that he makes on his mother's home equity loan as a "necessary living expense." Johnson failed to show

that these payments were "necessary to provide for [his] and his ... family's health and welfare and/or production of income." I.R.M. pt. 5.15.1.7(1) (2009). As the settlement officer assigned to his case noted, Johnson made no showing that he was legally liable for his mother's debt, let alone that she was unable to make the payments herself. *See Johnson v. Comm'r*, 136 T.C. 475, 495 (2011). Given all this, it is clear that the IRS did not abuse its discretion in rejecting Johnson's offers-in-compromise.

■ Johnson next argues that the IRS abused its discretion by failing to honor what Johnson characterizes as an agreement he struck with an IRS settlement officer. But as the Tax Court points out, Johnson never struck an agreement with any settlement officer. *See id.* at 495–97. While a settlement officer internally proposed that the IRS accept Johnson's settlement offer in January 2009, the settlement officer's supervisor rejected the proposed settlement. Thus, there was no agreement to dishonor in the first place. In any event, settlement officers cannot bind the IRS to settlements with taxpayers. "It is a settled principle of law that the United States is not bound by the unauthorized acts of its agents, that it is not estopped to assert the lack of authority as a defense, and that persons dealing with an agent of the government must take notice of the limitations of his authority." *Bornstein v. United States*, 170 Ct.Cl. 576, 345 F.2d 558, 562 (1965) (citing, *inter alia, Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947)). Only a handful of IRS Appeals officers, including Chiefs, Assistant Chiefs, and Appeals Team Case Leaders, can make bona fide settlement agreements. *See* Treas. Reg. § 601.106(a); IRS Deleg. Order No. 66, Rev. 15, 1992 WL 12007248 (Jan. 23, 1992) (Authority of Appeals in Protested and Tax Court Cases). Settlement officers cannot bind the IRS to settlement contracts on their own; they can only recommend that their superiors do so.

■ Johnson claims that the IRS violated 26 U.S.C. § 6330(c)(3), which requires that "[t]he determination by an appeals officer ... shall take into consideration ... whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." 26 U.S.C. § 6330(c)(3). Johnson's argument rests on a misinterpretation of the statute. The statute concerns the IRS's "determination[s]" regarding how best to engage in collections. Ignoring this meaning, Johnson focuses entirely on the alleged intrusiveness of the *collection due process proceeding* he initiated with the IRS. There is a crucial difference between collection due process proceedings and the "collection action[s]" to which the statute refers. "[C]ollection actions" are the actions IRS officials seek to take upon making a "determination." They are debt collection tactics: liens, levies, and the like. In contrast, collection due process proceedings are administrative processes that *precede* any final IRS determination. The Tax Court was correct when it noted that "section 6330(c)(3)(C) does not provide that the *CDP process* must not be 'more intrusive than necessary', but rather that the proposed 'collection action ... be no more intrusive than necessary.'" *Johnson*, 136 T.C. at 497–98 (quoting 26 U.S.C. § 6330(c)(3)(C)) (emphasis added). The only thing that must be "no more intrusive than necessary" is the method of collection that the IRS deems appropriate. *See, e.g., Sanchez v. Comm'r*, 101 T.C.M. (CCH) 1715, at *2 (2011) (discussing the "intrusiveness of the proposed collection action"); *see also Living Care Alternatives of Utica, Inc. v. United States*, 411 F.3d

621, 627 (6th Cir.2005) (discussing § 6330(c)(3) and the "decision to proceed with levying ... property"). Since Johnson made no reference to the IRS's proposed collection actions, he failed to state a § 6330(c)(3) claim before the Tax Court.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold the issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* FED. R.APP. P. 41(b); D.C. CIR. R. 41.