T.C. Memo. 2014-81

UNITED STATES TAX COURT

ALFRED A. PORRO, JR. AND JOAN ATKINS PORRO, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14531-10L.                    Filed May 6, 2014.

Joseph A. DiRuzzo, III, Sanpreet K. Dhaliwal, and Jennifer Correa Riera,

for petitioners.

Derek P. Richman and William Lee Blagg, for respondent.

MEMORANDUM OPINION

JACOBS, Judge: The parties submitted this case fully stipulated pursuant

to Rule 122. The issue for decision is whether respondent's settlement officer

abused her discretion in rejecting petitioners' offer-in-compromise as an

alternative to collection of petitioners' unpaid Federal income tax liabilities for

[*2] years 1990 and 1991 by way of levy. For the reasons set forth infra, we find that respondent's settlement officer did not abuse her discretion.

Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. At the time they filed their petition, petitioners resided in Florida.

Background

On May 6, 2005, the Internal Revenue Service (IRS) issued a notice of deficiency to petitioners for years 1989 through 1992 inclusive. On July 20, 2005, petitioners filed the petition in this Court at docket No. 13398-05 for redetermination of the determinations set forth in the notice of deficiency. On May 2, 2007, a stipulated decision was entered pursuant to which it was agreed that petitioners were not liable for any deficiencies or penalties for years 1989 or 1992 but were liable for deficiencies and penalties for years 1990 and 1991 as follows:

| Year | Deficiency | Fraud penalty sec. 6663(a) |
|------|------------|----------------------------|
| 1990 | $49,761 | $18,660 |
| 1991 | 78,946 | 29,605 |

**[*3]** As of June 12, 2013, the assessed balances due for years 1990 and 1991 were $229,152.43 and $340,128.71, respectively.

On August 24, 2009, the IRS sent petitioners a Final Notice of Intent to Levy and Notice of Your Right to a Hearing, advising them that the IRS intended to proceed by levy to collect petitioners' unpaid 1990 and 1991 Federal tax liabilities. That notice informed petitioners that if they so desired, they could have a hearing (section 6330 hearing) on the matter by contacting the IRS Office of Appeals. On September 12, 2009, petitioners sent the IRS a Form 12153, Request for a Collection Due Process or Equivalent Hearing, in which they stated they wished to propose a collection alternative to the proposed levy.

On April 19, 2010, Settlement Officer Laverne Burks conducted a face-to-face hearing with petitioners' representative, David Berman. They discussed collection alternatives but were unable to reach an agreement. On June 2, 2010, the IRS Office of Appeals mailed petitioners a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) informing them that the IRS' determination to levy on petitioners' assets was sustained. On June 25, 2010, petitioners petitioned the Court under section 6330(d) to review the determination of the IRS Office of Appeals. In their petition, petitioners stated that the IRS failed to pursue a less intrusive collection

[*4] alternative, inasmuch as petitioners had "agreed to immediately liquidate all assets, INCLUDING RESIDENCE [i.e., their Miami home] and pay all proceeds to IRS for [the] tax claimed due".

On August 25, 2011, the IRS requested petitioners' case be remanded to the IRS Appeals Office in order to afford petitioners another section 6330 hearing. The Court granted this request on August 26, 2011.

On November 7, 2011, Settlement Officer Burks renewed working on petitioners' case. She attempted to reach Mr. Berman by phone but was unsuccessful. She then wrote him a letter with regard to scheduling another section 6330 hearing.

On November 17, 2011,[1] petitioners mailed a letter to the IRS in which they offered to settle their unpaid Federal income tax liabilities for $40,000. Settlement Officer Burks spoke with petitioners by telephone on November 21, 2011. She informed petitioners that they had to file Form 656, Offer in Compromise, and Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, in order to make an offer-in-compromise. In point of fact, petitioners had submitted Forms 656 and 433-A, but the forms were mailed to the

---

[1]By this time it appears Mr. Berman had ceased representing petitioners.

[*5] wrong IRS department.  Eventually, the forms made their way to Settlement Officer Burks.

Petitioners' $40,000 settlement offer reflected a change in their finances. Petitioners had retired and liquidated their interests in a business called Terra Firma, Inc., in February 2011, receiving $70,000.  Further, petitioners sold their Miami home on June 6, 2011, receiving net proceeds of $153,778.26.  Petitioners informed the IRS that the proceeds from both transactions would be used to settle their tax liabilities.

Petitioners' case was transferred to Settlement Officer Shari Gropack on June 1, 2012.  Settlement Officer Gropack reviewed petitioners' offer-in-compromise and associated financial documentation.  She determined that petitioners' monthly living expenses exceeded their monthly income by approximately $561.  Settlement Officer Gropack did not have sufficient information to determine precisely the amount of petitioners' assets, but on the basis of the documentation available, she determined petitioners' equity value in various assets totaled almost $400,000.

Settlement Officer Gropack held a face-to-face section 6330 hearing with petitioners on July 12, 2012.  At the meeting, petitioners informed Settlement Officer Gropack that their monthly expenses exceeded their monthly income and

**[*6]** that they were using the proceeds from both the sale of the Miami home and the liquidation of their interests in Terra Firma, Inc., to help pay their living expenses. Petitioners' other assets were also discussed. Settlement Officer Gropack determined that a house in Rutherford, New Jersey (New Jersey house), was owned by petitioners. Petitioners disputed that determination, claiming they had no interest in the New Jersey house because it had been transferred to their son by way of a quitclaim deed dated May 21, 2006.[2] After discussing their case with Settlement Officer Gropack, petitioners increased the amount of their offer-in-compromise from $40,000 to $50,000.

Settlement Officer Gropack calculated petitioners' reasonable collection potential to be $334,125. In reaching her conclusion, she included in her calculations (1) cash and bank accounts totaling $45,507; (2) furniture and personal effects valued at $430; (3) an interest in an Oppenheimer Investment Fund totaling $1,845; (4) the loan value of life insurance of $44,892; and (5) pensions /IRA/401(k) assets of $10,660.

---

[2]In reviewing the quitclaim deed, we note that the legal description of the property is incomplete. The deed states: "Also know as Lot ___, Block ___, on the tax map for the Borough of Rutherford, County of Bergen, State of New Jersey." We also note that each place a date appears, the date is altered, including the expiration date of the notary public's commission. Petitioners did not offer an explanation for these omissions or alterations.

[*7]    Also included in the calculation of petitioners' reasonable collection potential were amounts for the following dissipated assets:  (1) $153,778.26 received by petitioners from the sale of the Miami home; (2) $70,000 received from the liquidation of petitioners' interests in Terra Firma, Inc.; and (3) $7,013[3] as the equity in the New Jersey house.  Settlement Officer Gropack included the proceeds from the sales of the Miami home and petitioners' interest in Terra Firma, Inc., "because the taxpayers did not show where the money went."  She included the equity value of the New Jersey house because of numerous inconsistencies in petitioners' statements as to the ownership of the New Jersey house.  In this regard, petitioners initially claimed that they had purchased the New Jersey house on behalf of their son because at the time he was a minor, but they later acknowledged that their son had reached the age of majority several years before the house was purchased.  Settlement Officer Gropack noted in the IRS case activity file that (1) the New Jersey property assessment records reflected Mr. Porro as the owner of the New Jersey house in 2007, 2008, 2009, 2010, and 2011, and (2) an Internet search of property title records indicated petitioners owned the property.

---

[3]See infra pp. *8-*9 for a discussion with respect to the methodology respondent used in determining petitioners' equity in the New Jersey house.

**[*8]** Settlement Officer Gropack was mindful of Mr. Porro's criminal conviction in 1999 and that the U.S. Department of Justice had a restitution lien lasting until 2024 against all property he owned.[4] She noted in the IRS case activity file that the Department of Justice had been garnishing approximately $220 of Mr. Porro's monthly Social Security payments and that Mr. Porro owed more than $202,000 in restitution to the Bank of New York.

Settlement Officer Gropack confirmed that petitioners' monthly expenses continued to exceed their monthly income and the monthly deficit at the time was $1,733. She noted in the IRS case activity file that

> [i]f I were to use this deficit and muttiple [sic] by 10 years, approximately what we have to collect on, then the taxpayers would need to use $207,960 to live on for the next 10 years to meet basic living expenses. Therefore, I would have to reduce the taxpayers' RCP by this amount. Additionally, with the restitution lien having priority, that's an additional $200,000. I will have to reach out to the DOJ [Justice Department] to see exactly what remains, if anything. I also have to see if interest is applicable.
>
> This would reduce the taxpayers' ability to pay to about $100,000.

---

[4]Mr. Porro was found guilty of mail fraud and of supplying banks with false information and other statements in connection with his attempts to secure lines of credit and business loans. On October 14, 1999, the U.S. District Court for the District of New Jersey sentenced him to 70 months imprisonment and five years of supervised release. Mr. Porro's sentence also included a judgment ordering him to pay restitution to the Bank of New York because he fraudulently obtained a loan from that bank which ultimately resulted in a net loss of $208,661.

**[*9]**   Settlement Officer Gropack spoke with a Department of Justice official on July 17, 2012.  She learned that as of July 13, 2012, Mr. Porro owed $199,978.22 in restitution to the Bank of New York.  She subtracted the amount of the restitution debt from the amount she determined as the value of petitioners' equity in the New Jersey house because at the section 6330 hearing petitioners "did mention a federal restitution lien on the property."[5]

On July 17, 2012, Settlement Officer Gropack spoke with Mr. Porro by telephone.  She informed him that she would recommend acceptance of a $100,000 offer-in-compromise of petitioners' unpaid Federal tax liabilities.  Mr. Porro replied that the largest amount petitioners could pay without borrowing additional funds was $50,000, the same amount petitioners had offered.

The next day, Settlement Officer Gropack completed a final review of petitioners' finances.  She confirmed her previous determination that petitioners' reasonable collection potential was $334,125.

On July 23, 2012, the IRS Appeals Office issued a Supplemental Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (supplemental notice of determination).  In the supplemental notice of

---

[5]Settlement Officer Gropack also reduced the amount of petitioners' equity in the New Jersey house to take into account a $25,000 mortgage on the property.

**[*10]** determination, the IRS rejected petitioners' $50,000 offer-in-compromise, stating that on the basis of an analysis of their financial circumstances, petitioners could afford to pay more than the amount offered.

Discussion

I.     Standard of Review

This case involves a review of the IRS' determination to proceed with collection of petitioners' unpaid Federal income tax liabilities for 1990 and 1991 by way of levy. Section 6330 hearings concerning levies are conducted in accordance with section 6330(c). At the section 6330 hearing a taxpayer may raise any relevant issues relating to the unpaid tax, including spousal defenses, challenges to the appropriateness of the collection action, and offers of collection alternatives. A taxpayer may challenge the existence or amount of the underlying tax liability only if he/she did not receive a notice of deficiency or otherwise have an opportunity to dispute the liability. Sec. 6330(c)(2)(B); sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs. Petitioners had received a notice of deficiency and litigated the deficiencies in this Court. Thus, they may not challenge the existence or amounts of the deficiencies for years 1990 and 1991.

After the Commissioner issues a notice of determination, a taxpayer may petition this Court for review thereof. Sec. 6330(d)(1). The Court's review of the

**[*11]** Commissioner's determination is subject to the provisions of section 6330. Because petitioners do not dispute the underlying tax liabilities for 1990 and 1991, we review the IRS' determination for abuse of discretion. See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). An abuse of discretion is defined as any action that is unreasonable, arbitrary or capricious, clearly unlawful, or lacking a sound basis in fact or law. Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532-533 (1979); Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

II. Petitioner's Arguments

Petitioners first argue that Settlement Officer Gropack's rejection of their $50,000 offer-in-compromise constituted an abuse of discretion because her calculation of their reasonable collection potential was flawed in that (1) Settlement Officer Gropack failed to fully and properly account for Mr. Porro's restitution obligations and the effect of those obligations on petitioners' assets; (2) Settlement Officer Gropack erroneously included the proceeds from the sale of petitioner's Miami home and the liquidation of petitioners' interests in Terra Firma, Inc., as dissipated assets; and (3) Settlement Officer Gropack erred by including the New Jersey house as one of petitioners' assets.

[*12] Second, petitioners argue that even if Settlement Officer Gropack's reasonable collection potential calculation was correct petitioners were entitled to avail themselves of a "special circumstances" exception that permits the acceptance of offers less than a taxpayer's reasonable collection potential. We now review each of petitioners' arguments in turn.

III. The Settlement Officer's Reasonable Collection Potential Calculation

A. Mr. Porro's Restitution Obligations

As of July 13, 2012, Mr. Porro was required to pay $199,978.22 as restitution arising out of his 1999 criminal conviction. Petitioners point out that when criminal restitution obligations are imposed under 18 U.S.C. sec. 3663A (2006), 18 U.S.C. sec. 3613 (2006) provides that a lien automatically arises on all of the assets and property interests of the restitution debtor. Petitioners assert that Settlement Officer Gropack failed to conduct a "thorough investigation" to determine the "true equity available to Petitioners for inclusion in their RCP". Continuing, petitioners assert: "Settlement Officer Gropack should have undertaken a more through analysis, as mandated by the statute, to determine how much a sale of Petitioners' assets would have actually yielded in light of Alfred Porro's restitution obligations."

**[*13]** Petitioners assertions are not persuasive. Contrary to petitioners' assertions, the record demonstrates that Settlement Officer Gropack did investigate the true equity value of petitioners' assets available for inclusion in their reasonable collection potential before the issuance of the supplemental notice of determination. Settlement Officer Gropack accounted for petitioners' negative monthly income and the monthly $220 garnishment from Mr. Porro's Social Security payments and reduced the equity value of the assets available to petitioners by the $199,978.52 restitution obligation outstanding as of July 13, 2012.

Petitioners additionally assert that Settlement Officer Gropack erred by applying the entire restitution obligation against the equity in the New Jersey house. Petitioners maintain the restitution obligation should have been applied against the equity in all of their assets.

These assertions are also unpersuasive. Settlement Officer Gropack noted in the IRS case activity file that during the face-to-face section 6330 hearing, petitioners did "mention a federal restitution lien on the property". Consequently, we cannot say that Settlement Officer Gropack abused her discretion in applying the full amount of Mr. Porro's restitution obligation against the New Jersey house. In any case, money is fungible. See, e.g., United States v. Sperry Corp., 493 U.S.

**[\*14]** 52, 62 n.9 (1989); <u>Bobrow v. Commissioner</u>, T.C. Memo. 2014-21; <u>O'Neil</u>

<u>v. Commissioner</u>, T.C. Memo. 2012-339.  Applying the restitution obligation

against any single asset reduces petitioners' total equity value in all their assets

and, therefore, reduces the amount of petitioners' reasonable collection potential.[6]

In sum, we find that Settlement Officer Gropack properly accounted for Mr.

Porro's restitution obligation and that she properly reduced petitioners' reasonable

collection potential to reflect that obligation.

####    B.     Dissipated Assets

Petitioners assert that Settlement Officer Gropack erred by including the

$153,778.26 of net proceeds they received from the 2011 sale of their Miami home

and the $70,000 in proceeds arising from the 2011 liquidation of their interests in

Terra Firma, Inc., a total of $223,778.26, as dissipated assets.  Petitioners maintain

these moneys were used to pay their necessary living expenses.

Dissipated assets are those assets that have been sold, transferred, or spent

on nonpriority items or debts in disregard of an outstanding tax liability.  <u>Taggart</u>

<u>v. Commissioner</u>, T.C. Memo. 2013-113; <u>see</u> <u>Johnson v. Commissioner</u>, 136 T.C.

---

[6]Petitioners' argument that the New Jersey house should not have been included in the list of their assets is a separate argument and is discussed <u>infra</u> pp. *16-*19.

[*15] 475, 487 (2011), aff'd, 502 Fed. Appx. 1 (D.C. Cir. 2013). The Internal Revenue Manual (IRM) provides that settlement officers are to determine whether such dissipated assets exist and are no longer available to pay a tax liability. See IRM pt. 5.8.5.16(2) (Oct. 22, 2010). The determination as to the inclusion of the value of a taxpayer's dissipated assets in his/her reasonable collection potential is based on all facts and circumstances of the case, i.e., each case must be evaluated on its own merit. Id. pt. 5.8.5.16(1). Settlement officers are counseled that "[i]f the taxpayer does not provide information showing the disposition of funds from transferred assets, consider all of these amounts in an acceptable offer amount." Id. pt. 5.8.5.16(5). The taxpayer is to be contacted (preferably by telephone) and afforded the opportunity to explain or verify the disposition of the asset. Id. pt. 5.8.5.16(8).

At the section 6330 hearing, petitioners informed Settlement Officer Gropack that they were using the proceeds from the sale of their Miami home and liquidation of their interests in Terra Firma, Inc., to pay their living expenses. Previously, petitioners had stated that they would use those proceeds to settle their unpaid Federal income tax liabilities. Although petitioners claimed to have used the $223,778.26 ($153,778.26 from the sale of the Miami home and $70,000 from the liquidation of petitioners' interests in Terra Firma, Inc.) in proceeds to pay

[*16] their living expenses, Settlement Officer Gropack noted in the IRS case activity file that petitioners did not document where the payments went. We reviewed petitioners' bank records, but we were unable to identify how the proceeds from the sale of the Miami home and the liquidation of the Terra Firma, Inc. interests were used. It appeared that the proceeds from the sale of the Miami home were quickly spent, despite petitioners' statements to the IRS that the proceeds would be held to settle their unpaid Federal income tax liabilities. As respondent's counsel notes in brief, between March and December 2011, petitioners dissipated more than $162,000. Petitioners have the burden to establish that the proceeds from the sale of the Miami home and the liquidation of petitioners' interests in Terra Firma, Inc., were expended for their necessary and reasonable living expenses. To conclude, we cannot say that Settlement Officer Gropack abused her discretion in characterizing the sale proceeds as dissipated assets in the calculation of petitioners' reasonable collection potential.

C.    Ownership of the New Jersey House

Petitioners contend that they do not own the New Jersey house and that Settlement Officer Gropack erred in including the value of the New Jersey house in petitioners' reasonable collection potential. Petitioners correctly note that the Court initially looks to State law to determine what rights a taxpayer has in

[*17] property the Government seeks to reach, and then to Federal law to determine whether the taxpayer's State-delineated rights qualify as "property" or "rights to property" within the compass of Federal tax law. See Drye v. United States, 528 U.S. 49, 58 (1999). Under that analysis, petitioners assert they were not the owners of the property.

Before addressing petitioners' specific arguments, we are constrained to note that even if we agreed with petitioners and disregarded the value of the New Jersey house, it would not affect the outcome of this case. Petitioners' reasonable collection potential, as determined by Settlement Officer Gropack, after taking into account Mr. Porro's restitution obligation and without considering the value of the New Jersey house, is $127,134, which is greater than the $50,000 petitioners offered as well as the $100,000 amount Settlement Officer Gropack suggested as an acceptable offer-in-compromise. And as respondent's counsel notes, IRM pt. 5.8.5.5.2(5) (Oct. 22, 2010) states that if the value of a taxpayer's assets other than the transferred property at issue is greater than the taxpayer's offer-in-compromise amount, that offer should be rejected.

Petitioners purchased the New Jersey house in 1986. Petitioners provided Settlement Officer Gropack with a quitclaim deed, dated May 21, 2006, which recites that petitioners granted Kevin Porro, their son, the New Jersey house for

[*18] $100.  But as respondent's counsel notes, the quitclaim deed is incomplete, in that part of the legal description of the property was not filled out and all of the dates were altered, including the expiration date of the notary public's commission.  Further, New Jersey property assessment records list Mr. Porro as the owner of the New Jersey house from 2007 through 2011.  As respondent's counsel notes, this indicates that the deed was not recorded.  Petitioners claim that the State "record is not conclusive, especially in light of a fully executed deed indicating that Petitioners transferred the property."  Thus, petitioners argue that Settlement Officer Gropack should have undertaken a more substantial analysis of the ownership of the New Jersey house.  This argument, though, undermines petitioners' position that Settlement Officer Gropack ignored New Jersey State law in determining what rights petitioners had in the New Jersey house.   In any case, Settlement Officer Gropack was not required to conduct a further investigation.  See Dalton v. Commissioner, 682 F.3d 149 (1st Cir. 2012), rev'g T.C. Memo. 2011-136 and 135 T.C. 393 (2010).  Moreover, we are mindful that transfers between related parties are examined with special scrutiny, see Estate of Rosen v. Commissioner, T.C. Memo. 2006-115, and it is petitioners who are obliged to resolve any contradictions in the record as to the ownership of the New Jersey house.  Settlement Officer Gropack documented in the IRS case activity file

[*19] her thought process in determining that petitioners were the owners of the New Jersey house. We cannot say that her determination is unreasonable or arbitrary.

Petitioners next argue that Settlement Officer Gropack failed to follow the guidelines of IRM pt. 5.8.5.5.2(2) (Oct. 22, 2010) regarding the treatment of assets held by a nominee or alter ego. In making this argument, it appears that petitioners are asserting that they held the New Jersey house as a nominee for their son. But petitioners provided no documentation to indicate that the New Jersey house was ever held for the benefit of their son. And we are mindful that although initially petitioners claimed that the house was purchased in Mr. Porro's name because their son was a minor at the time, they eventually abandoned this claim when it became clear it was untrue.

IV. Special Circumstances

In some cases, the IRS may accept an offer-in-compromise of less than the amount of a taxpayer's reasonable collection potential if there are "special circumstances." See Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517. Special circumstances are: (1) circumstances demonstrating that the taxpayer would suffer economic hardship if the IRS were to collect from him/her an amount equal to the reasonable collection potential and (2) compelling public policy or

[*20] equity considerations that provide a sufficient basis for compromise. Leago v. Commissioner, T.C. Memo. 2012-39; see Murphy v. Commissioner, 125 T.C. 301, 309 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). The IRM instructs settlement officers to give consideration to economic hardship and public policy or equity when investigating any offer-in-compromise. IRM pt. 5.8.4.2(1) (June 1, 2010). Settlement officers are directed to IRM pt. 5.8.11 (Sept. 23, 2008), which discusses factors to consider when a taxpayer raises the issue of economic hardship, including age, employment status, dependents, cost of living in the area, and extraordinary circumstances such as medical catastrophe or natural disaster. Id. pt. 5.8.11.2.1(5).

Petitioners assert that Settlement Officer Gropack ignored the guidance of the IRM and failed to take into account the fact that Mr. Porro was retired, that petitioners' only income was from Social Security, and that petitioners had to draw on their savings to pay their living expenses. Petitioners' assertion is incorrect.

After Settlement Officer Gropack accounted for Mr. Porro's restitution obligation, she acknowledged that Mr. Porro was retired, that petitioners' income came from their Social Security benefits, and that their monthly income was $1,733 less than their monthly expenses. Extrapolating these amounts over a 10-year period, Settlement Officer Gropack determined that petitioners would expend

[*21] more than $200,000 from savings on their basic living expenses. She

reduced petitioners' reasonable collection potential by that amount. Thus, even

though Settlement Officer Gropack determined that petitioners' reasonable

collection potential was $334,125, she was willing to accept only $100,000 in

satisfaction of petitioners' unpaid Federal income tax liabilities.[7]

## V. Other Matters Considered at the Section 6330 Hearing

Section 6330(c)(1) and (3) provides that the settlement officer must verify

that the requirements of applicable law and administrative procedure have been

met and must consider whether the proposed collection action balances the need

for the efficient collection of taxes with the legitimate concern of the taxpayer that

any collection action be no more intrusive than necessary. In the supplemental

notice of determination, Settlement Officer Gropack stated that she verified that

---

[7]Petitioners also refer to sec. 301.7122-1(b)(3), Proced. & Admin. Regs., arguing that an offer-in-compromise may be entered into to promote effective tax administration (which constitutes a special circumstance) when it is determined that, although collection in full could be achieved, collection of the full liability could cause the taxpayer economic hardship. Both parties agree that petitioners' unpaid Federal income tax liabilities cannot be collected in full. Consequently, petitioners were not entitled to an offer-in-compromise based on effective tax administration. In any case, the factors supporting such an offer-in-compromise, as provided in sec. 301.7122-1(c)(3), Proced. & Admin. Regs., are broadly similar to those discussed throughout the remainder of this opinion and were used by Settlement Officer Gropack.

[*22] the requirements of all applicable law and administrative procedure were met and that she determined that the levy appropriately balanced the need for efficient collection of taxes with petitioners' concern that the collection action be no more intrusive than necessary. We have no reason to doubt the truthfulness of these statements. In sum, we are satisfied that the mandates of section 6330(c)(1) and (3) have been met.

To reflect the foregoing,

Decision will be entered

for respondent.