T.C. Memo. 2019-86

UNITED STATES TAX COURT

IRVIN HANNIS CATLETT, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5194-16L.                    Filed July 11, 2019.

Irvin Hannis Catlett, Jr., pro se.

<u>Deborah Aloof</u> and <u>Jeffrey E. Gold</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  In this collection due process (CDP) case, petitioner

seeks review pursuant to sections 6320(c) and 6330(d)(1)[1] of the determination by

the Internal Revenue Service (IRS or respondent) to uphold a notice of Federal tax

_____

[1]Unless otherwise indicated, all statutory references are to the Internal Reve-
nue Code (Code) in effect at all relevant times.  We round all monetary amounts to
the nearest dollar.

**[*2]** lien (NFTL) filing. The IRS filed the NFTL to facilitate collection of criminal restitution it had assessed against petitioner under section 6201(a)(4). That section authorizes the IRS to "assess and collect the amount of restitution * * * for failure to pay any tax imposed under this title in the same manner as if such amount were such tax."

In September 2018 respondent informed the Court of his conclusion that the restitution-based assessments against petitioner were "premature." Petitioner is currently incarcerated, and respondent believes that the restitution ordered by the sentencing court will not be enforceable or assessable until petitioner is released from prison (most likely in 2026). On March 11, 2019, respondent informed the Court that all restitution-based assessments made against petitioner have been abated, that the NFTL has been withdrawn, and that this case in his view is therefore moot. Agreeing with that submission, we will dismiss this case on grounds of mootness.

## Background

The following facts are derived from the parties' pleadings, motion papers, and the exhibits attached thereto. Pursuant to rule 201 of the Federal Rules of Evidence, we take judicial notice of certain filings in petitioner's criminal case. See United States v. Catlett, No. 8:10-cr-0101-001 (D. Md. filed Mar. 10, 2010).

[*3] Petitioner was incarcerated in a Federal correctional facility in Ayer, Massachusetts, when he filed his petition. He listed Maryland, the State in which he resided before his incarceration, as his place of legal residence.

Petitioner operated during 1999-2008 a tax return preparation business in which he prepared fraudulent returns. He was charged with one count of conspiracy to defraud the United States in violation of 18 U.S.C. sec. 371 (2006), ten counts of assisting in the preparation of false tax documents in violation of section 7206(2), and one count of corruptly endeavoring to obstruct and impede the administration of the tax laws in violation of section 7212(a). He was convicted on all counts on November 4, 2010.

On March 17, 2011, petitioner was sentenced to imprisonment for a term of 210 months, followed by three years of supervised release. In a judgment entered on March 22, 2011, the U.S. District Court for the District of Maryland ordered him to pay to the IRS restitution of $3,810,244. The judgment stated that "restitution shall be paid [in] monthly installments of $500.00 over a period of 3 year(s) to commence when the defendant is placed on supervised release." The U.S. Court of Appeals for the Fourth Circuit affirmed this judgment, United States v. Catlett, 498 F. App'x 352 (4th Cir. 2012), and it is now final.

**[\*4]**  On March 23, 2015, while petitioner was incarcerated, the IRS made assessments under section 6201(a)(4) for tax years 1999-2008.  These assessments totaled $3,810,244, the amount of restitution ordered by the sentencing court.  The IRS also assessed underpayment interest under section 6601(a) and failure-to-pay additions to tax under section 6651(a)(3), bringing petitioner's total liability to $5,858,514.

On September 29, 2015, the IRS filed an NFTL in an effort to collect this unpaid liability, and petitioner timely requested a CDP hearing.  A settlement officer (SO) from the IRS Appeals Office convened a telephone CDP hearing on January 12, 2016.  Petitioner urged that the IRS lacked authority to assess and collect the restitution; he also challenged the assessments of underpayment interest and additions to tax.[2]  The SO rejected these arguments and upheld the NFTL filing.  On February 5, 2016, the IRS issued petitioner a notice of determination sustaining the collection action, and he timely petitioned this Court for review.

On August 20, 2018, petitioner filed a motion for summary judgment in which he urged that "this Court [should] vacate[] th[e] restitution ordered by the

---

[2]In Klein v. Commissioner, 149 T.C. 341, 361-362 (2017), we held that section 6201(a)(4) does not authorize the IRS to assess, upon the amount of restitution ordered by the sentencing court, underpayment interest under section 6601(a) or failure-to-pay additions to tax under section 6651(a)(3).  Respondent in this Court does not question those holdings.

[*5] district court." As the basis for this motion he alleged that the trial court committed various errors during his criminal case, including a supposed violation of his constitutional right to confront witnesses. In a response filed September 21, 2018, respondent urged that petitioner's motion was ill founded: The judgment in his criminal case is now final, and section 6201(a)(4)(C) provides that "[t]he amount of * * * restitution may not be challenged by the person against whom assessed" in a CDP case such as this. See Carpenter v. Commissioner, 152 T.C. __, __ (slip op. at 31) (Apr. 18, 2019). However, respondent "concede[d] that the restitution-based assessments were premature and, therefore, must be abated."

Respondent predicated this concession on the fact that the sentencing court ordered restitution as a condition of supervised release, with the payments "to commence when the defendant is placed on supervised release." Because petitioner remains incarcerated, with an anticipated release date of 2026, respondent concluded that petitioner's restitution obligation is not yet enforceable or assessable. See United States v. Hassebrock, 663 F.3d 906, 924 (7th Cir. 2011) (Where "a district court can only impose restitution as a condition of supervised release, a defendant cannot be required to pay restitution until his period of supervised release begins."); United States v. Howard, 220 F.3d 645, 647 (5th Cir. 2000) ("Were restitution simply a term of supervised release or probation, it could not be

**[\*6]** due prior to the commencement of such a term." (quoting <u>United States v. Webb</u>, 30 F.3d 687, 690 (6th Cir. 1994))).

Upon reviewing respondent's concession, we asked that he supplement his response and inform the Court whether the IRS had in fact abated the restitution-based assessments and withdrawn the NFTL. On March 11, 2019, respondent filed a response to our order, confirming that: (1) the restitution-based assessments that were the subject of the CDP hearing (including the assessments of underpayment interest and additions to tax) were abated on September 5, 2018, and (2) a lien withdrawal notice, formally withdrawing the NFTL that was the subject of the CDP hearing, was filed electronically on February 6, 2019, in the U.S. District Court for the District of Massachusetts, the office in which the NFTL was originally filed.

## Discussion

Petitioner properly invoked our jurisdiction to review the notice of determination that sustained the NFTL filing. <u>See</u> sec. 6320(c) (cross-referencing section 6330(d)). Jurisdiction, once properly invoked, generally remains with the Court until we dispose of the controversy. <u>See</u> <u>Naftel v. Commissioner</u>, 85 T.C. 527, 530 (1985); <u>Dorl v. Commissioner</u>, 57 T.C. 720, 722 (1972), <u>aff'd</u>, 507 F.2d 406 (2d Cir. 1974). But because the IRS has abated all restitution-based assessments

**[\*7]** and withdrawn the NFTL that was the subject of the CDP hearing, respondent contends that there remains no adjudicable case or controversy between the parties, and hence that this case is moot.  We agree.

The Tax Court is an Article I court that is not directly constrained by the case or controversy requirement under Article III of the Constitution.  See Battat v. Commissioner, 148 T.C. 32, 46 (2017).  However, the same principles apply to the exercise of our judicial power.  See Anthony v. Commissioner, 66 T.C. 367, 370 (1976) ("Without a 'case' or 'controversy' before us, we would be exercising nonjudicial powers, and our opinions would not be reviewable[.]" (fn. ref. omitted)), aff'd without published opinion, 566 F.2d 1168 (3d Cir. 1977); see also Baranowicz v. Commissioner, 432 F.3d 972, 975 (9th Cir. 2005).  Accordingly, we will dismiss a case as moot if the parties' subsequent actions have produced a situation in which neither party retains any "legally cognizable interest in the outcome."  City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000) (quoting County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)).

Generally, a CDP case becomes moot when we can grant the taxpayer no further relief.  See Greene-Thapedi v. Commissioner, 126 T.C. 1, 13 (2006); Chocallo v. Commissioner, T.C. Memo. 2004-152, 87 T.C.M. (CCH) 1432, 1433.  In a typical CDP case, a decision by this Court not to sustain a collection action--e.g., a

**[\*8]** levy or NFTL filing--is the primary relief that we may grant. See Johnson v. Commissioner, 136 T.C. 475, 488 n.13 (2011), aff'd, 502 F. App'x 1 (D.C. Cir. 2013). Here, respondent himself has granted that relief by abating the restitution-based assessments and withdrawing the NFTL of which petitioner complained.

In some CDP cases we are empowered to redetermine the "amount of the underlying tax liability" that the IRS has assessed. See sec. 6330(c)(2)(B). A taxpayer may dispute his underlying liability at a CDP hearing only if he "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute * * * [it]." Ibid. And a taxpayer is precluded from disputing his underlying tax liability in this Court "if it was not properly raised in the CDP hearing." Thompson v. Commissioner, 140 T.C. 173, 178 (2013); see Giamelli v. Commissioner, 129 T.C. 107, 114 (2007).

In a CDP case such as this, the "underlying tax liability" consists of the restitution-based assessment that the IRS has made under section 6201(a)(4)(A). See Klein v. Commissioner, 149 T.C. 341, 349 (2017). In his motion for summary judgment petitioner sought to challenge his underlying liability for the restitution he was ordered to pay. He based this challenge on the ground that the sentencing court did not afford him a fair trial.

**[\*9]** For a variety of reasons we lack jurisdiction to decide this challenge. Petitioner's conviction and sentence--including the order that he pay restitution of $3,810,244 to the IRS--were affirmed on appeal. That judgment is now final, and it binds him as a matter of res judicata. Section 6201(a)(4)(C) explicitly provides that "[t]he amount of such restitution may not be challenged by the person against whom assessed on the basis of the existence or amount of the underlying tax liability in any proceeding authorized under this title." As we recently stated: "The proper time to challenge the amount of * * * [a defendant's] criminal restitution liability would have been when he was sentenced." Carpenter, 152 T.C. at __ (slip op. at 31).

We agree with respondent that this case is moot because we can grant no further relief to petitioner. He was precluded from disputing the amount of his restitution liability at the CDP hearing and thus cannot advance that challenge in this Court. See Thompson, 140 T.C. at 178. Respondent has abated all of the restitution-based assessments and has withdrawn the NFTL that was the subject of the CDP hearing. That having been done, it has become impossible for this Court to grant any effectual relief to petitioner as the prevailing party. See Pap's A.M., 529 U.S. at 287; Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992).

**[\*10]** Petitioner contends that his restitution liability remains the subject of live controversy because respondent has not conceded that liability. Respondent in fact represents that he "intends to reassess the ordered restitution upon petitioner's release from prison." In prior cases the Supreme Court has recognized an exception from the mootness doctrine where a controversy becomes moot solely from the defendant's "voluntary cessation" of the activity complained of. See Davis, 440 U.S. at 631 (quoting United States v. W. T. Grant Co., 345 U.S. 629, 632 (1953)). The rationale for this exception is that, while a unilateral cessation may grant temporary relief, the defendant might "return to [its] old ways" while using mootness to "avoid[] judicial review." Qassim v. Bush, 466 F.3d 1073, 1075 (D.C. Cir. 2006) (first alteration in original). Accordingly, a voluntary cessation does not prevent judicial review unless the defendant can show "that 'there is no reasonable expectation . . .' that the alleged violation will recur." Davis, 440 U.S. at 631 (quoting W.T. Grant Co., 345 U.S. at 633).

This Court has applied the "voluntary cessation" exception to the mootness doctrine in a case involving similar, but distinguishable, facts. In Vigon v. Commissioner, 149 T.C. 97 (2017), the IRS assessed penalties under section 6702 for frivolous tax submissions. Following a CDP hearing, the taxpayer in our Court challenged his underlying liability for the penalties and the propriety of the NFTL

[*11] filing. The IRS ultimately abated the penalty assessments and released the tax lien. But it reserved the right to reassess the penalties at a later date, taking the position that the Code imposed no limitations period on such action. Id. at 108.

We held that the case was not moot insofar as the taxpayer sought to challenge his underlying liability for the penalties. The taxpayer in Vigon, 149 T.C. at 103, raised a proper challenge to his underlying liability because he had had no prior opportunity to dispute the section 6702 penalties, which are assessable penalties not subject to deficiency procedures. Because the Commissioner did not concede the penalties and reserved the right to reassess them, we concluded that the controversy as to the taxpayer's underlying liability had not been finally resolved but merely gone into a dormant state. We accordingly declined to dismiss the case on mootness grounds, noting that "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case." Id. at 111 (quoting Church of Scientology of Haw. v. United States, 485 F.2d 313, 316 (9th Cir. 1973)).

The instant case differs from Vigon in a critical respect. The premise of our analysis in Vigon was that the taxpayer had raised a proper challenge to his underlying liability for the penalties, a challenge that we had the authority to adjudicate. Petitioner, by contrast, has not raised a proper challenge to his underlying liability for the restitution, and we have no authority to adjudicate that question. His liabil-

[*12] ity for the restitution was fixed by the District Court's sentencing order, which is now final, and section 6201(c)(4)(C) bars him from challenging the amount of the restitution he has been ordered to pay.

Once petitioner is released from prison, the IRS may well reassess the restitution under section 6201(a)(4) and proceed to collect it. Respondent has conceded that, absent a change in law, petitioner would be free to challenge that future collection effort at a future CDP hearing. See sec. 301.6320-1(d)(2), Q&A-D1, Proced. & Admin. Regs. (noting the availability of an additional CDP hearing when the IRS makes "an additional assessment of tax"). At that hearing petitioner could advance procedural arguments, challenge the propriety of a lien or levy, or propose collection alternatives in the form of an offer-in-compromise or installment agreement. But what he could not do then, any more than he can do now, is challenge his underlying liability for the restitution that the sentencing court has ordered him to pay.

In Vigon, the "underlying liability" issue was properly before us. Despite respondent's abatement of the penalties, that issue could have come before us again, because the IRS reserved the right to reassess the penalties. And because the IRS took the position that there was no limitations period on assessment, the "underlying liability" issue could theoretically have come before us indefinitely

**[\*13]** into the future through a repeated pattern of reassessments and abatements. See <u>Vigon</u>, 149 T.C. at 109. Despite the abatement in <u>Vigon</u>, the "underlying liability" issue was "capable of repetition yet evading review" and thus qualified for an exception to the mootness doctrine. See <u>Turner v. Rogers</u>, 564 U.S. 431, 439-440 (2011). Here, the "underlying liability" issue is not subject to our review at all.

In sum, petitioner's underlying liability for the restitution is not properly before us. By withdrawing the NFTL filing and abating the assessments as premature, respondent has afforded petitioner all the relief to which he was entitled at the CDP hearing. Because there is no other relief that we can possibly grant, there is no case or controversy left for us to decide, and we will accordingly dismiss this case as moot. If respondent elects to reassess the restitution after petitioner is released from prison, current law permits petitioner to challenge that collection effort (on grounds other than nonliability for the restitution) at a future CDP hearing. And if he is dissatisfied with the outcome of that hearing, he may petition this Court for review. See <u>Freije v. Commissioner</u>, 131 T.C. 1, 5 (2008), <u>aff'd</u>, 325 F. App'x 448 (7th Cir. 2009).

**[*14]** To implement the foregoing,

<u>An appropriate order of dismissal will</u>

<u>be entered</u>.