# United States Tax Court

T.C. Memo. 2024-46

JOHN A. HARTMANN,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 6955-23L.                    Filed April 17, 2024.

————

*John A. Hartmann*, pro se.

*Brian R. Cullin* and *Brian S. Jones*, for respondent.

MEMORANDUM OPINION

JONES, *Judge*: In this collection due process (CDP) case, petitioner, John A. Hartmann, asks the Court to review a Notice of Determination Concerning Collection Actions under IRS Sections 6320[1] and 6330 of the Internal Revenue Code (notice of determination), issued by the Internal Revenue Service (IRS) Independent Office of Appeals (Appeals) on March 21, 2023. The notice of determination sustained a proposed levy action to collect unpaid federal income tax for taxable year 2016.

This matter is before the Court on respondent's Motion for Summary Judgment (Motion) pursuant to Rule 121, filed January 3,

————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulatory references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*2] 2024. Respondent contends that there are no disputed issues of material fact and that the notice of determination to sustain the proposed levy action does not constitute an abuse of discretion. On January 24, 2024, Mr. Hartmann filed an Opposition to Motion for Summary Judgment (Opposition), with three attached Exhibits.

The issue for decision is whether Appeals abused its discretion by denying Mr. Hartmann's request for collection alternatives, including currently not collectible (CNC) status, an installment agreement (IA), and an offer-in-compromise (OIC), and sustaining the proposed levy action. For the reasons elaborated upon below, we agree that Appeals did not abuse its discretion. We will therefore grant respondent's Motion.

*Background*

The following background information is drawn from the parties' pleadings, Motion papers and attached Exhibits, and the Administrative Record of the CDP hearing conducted pursuant to section 6330. *See* Rules 93, 121(c). This background is stated solely for the purpose of resolving the present Motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). Mr. Hartmann resided in New Jersey when he filed his Petition.

I.     *Deficiency, Notice, and Request for a CDP Hearing*

This matter arises from Mr. Hartmann's self-assessed but unpaid federal income tax liability for taxable year 2016. Mr. Hartmann is a lawyer with decades of experience.

On August 16, 2021, the IRS issued Mr. Hartmann Notice CP90, Notice of Intent to Seize Your Assets and of Your Right to a Hearing, concerning taxable year 2016. Mr. Hartmann requested a CDP hearing by filing Form 12153, Request for a Collection Due Process or Equivalent Hearing, dated August 25, 2021, and received by the IRS on September 17, 2021. On his Form 12153, Mr. Hartmann checked the boxes for "Offer in Compromise," "Installment Agreement," and "I Cannot Pay Balance" collection alternatives and made a notation stating that "all three apply." Additionally, Mr. Hartmann stated that he was "unable to pay presently & [was] willing to make an agreement. Moreover don't feel that penalties reasonable." On April 28, 2022, the IRS mailed Mr. Hartmann Letter 4473C, notifying him that the IRS received his request for a CDP hearing and that his case was being forwarded to

[*3] Appeals for consideration. Additionally, the letter stated that the IRS had not received a completed copy of Form 656, Offer in Compromise, and that he should mail the completed form to the appropriate address.

II.    *The CDP Hearing*

Mr. Hartmann's CDP hearing was assigned to Appeals Officer Marie A. Henry (AO Henry). On July 6, 2022, AO Henry verified that she had no prior involvement with Mr. Hartmann for the type of tax and tax year at issue, reviewed the case file, and verified that the requirements of any applicable law or administrative procedure were met. On August 4, 2022, AO Henry Issued Letter 4837, Substantive Contact Letter, and scheduled a telephone CDP conference for September 6, 2022. The letter also requested that Mr. Hartmann submit (1) a completed Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals (Form 433–A); (2) signed Forms 1040, U.S. Individual Income Tax Return, for taxable years 2018, 2019, 2020, and 2021, which IRS records show as not having been filed; and (3) proof of current estimated tax payments made in full for the year to date.

On August 17, 2022, AO Henry received a voicemail from Mr. Hartmann stating that he could not meet on September 6, 2022, and requesting that the conference be postponed to the week of September 19, 2022. Later that same day, AO Henry called Mr. Hartmann and rescheduled the CDP conference for September 20, 2022.[2]

On September 20, 2022, AO Henry held a telephone CDP conference with Mr. Hartmann. AO Henry mentioned that Mr. Hartmann had not filed returns for taxable years 2018 through 2021, and Mr. Hartmann responded that he had filed his return for taxable year 2018 about a year before. Additionally, AO Henry stated that Mr. Hartmann had not provided the documents requested in the August 4, 2022, letter, and Mr. Hartmann responded that he had received only one side of the letter. Accordingly, AO Henry addressed the items requested

---

[2] On August 25, 2022, AO Henry received a letter from Mr. Hartmann, postmarked August 16, 2022 (the date before Mr. Hartmann left the previously discussed voicemail for AO Henry), requesting that the CDP conference be rescheduled to the week of September 19, 2022. Accordingly, AO Henry called Mr. Hartmann to confirm the adequacy of the previously rescheduled conference set for September 20, 2022, which Mr. Hartmann agreed was okay.

[*4] in the letter, including Form 433–A, signed copies of tax returns for taxable years 2018 through 2021, and proof of estimated tax payments. Mr. Hartmann stated that he was not sure if he could pay anything, but that he would file his return for taxable year 2021 by October 15, 2022,[3] and he would prepare Form 433-A by October 17, 2022. AO Henry scheduled a followup conference with Mr. Hartmann for October 17, 2022, and advised that if Mr. Hartmann did not participate, she would close the case and issue a notice of determination.

On October 12, 2022, AO Henry received a voicemail from Mr. Hartmann requesting to reschedule to the week of October 24, 2022. Later that day, AO Henry called Mr. Hartmann and rescheduled the followup conference for October 24, 2022. Thereafter, on October 24, 2022, the parties held a followup telephone CDP conference. Mr. Hartmann stated that he had sent his Form 433–A to Appeals the prior week. AO Henry inquired about the missing tax returns, and Mr. Hartmann responded that he had sent his return for taxable year 2019 to the IRS the prior week and was working on his returns for taxable years 2020 and 2021. AO Henry also inquired about the return for taxable year 2018, which Mr. Hartmann stated he had sent the previous summer. But AO Henry noted that per the Individual Master File On-Line System, the return had not yet been filed. AO Henry also noted that Mr. Hartmann had not made the required estimated tax payments; and when he inquired about the possibility of an OIC, AO Henry explained that all returns must be filed and he must make estimated payments for taxable year 2022 or his offer would be returned. At the conclusion of the followup CDP conference, Mr. Hartmann requested until November 30, 2022, to file all delinquent returns and submit copies of those returns and a Form 656 to Appeals.

On November 30, 2022, Mr. Hartmann called AO Henry for their second followup CDP conference, but Mr. Hartmann was unable to reach AO Henry and left a voicemail requesting a return call. The following day, December 1, 2022, AO Henry noted in the CAR that Appeals had received a copy of Mr. Hartmann's Form 433–A on November 30, 2022, and cursory review of the form revealed that he had the ability to pay $6,000 per month, although he did not include any substantiation with

---

[3] An entry in the Case Activity Record (CAR), dated September 20, 2022, states that Mr. Hartmann would provide his return for taxable year 2021 by October 15, 2021, not 2022. This date appears to be a typographical error, and we understand the entry to mean that Mr. Hartmann would provide his return for taxable year 2021 by October 15, 2022.

[*5] the form. On Form 433–A Mr. Hartmann stated that he had total income of $14,001 per month and total expenses of $8,000 per month.[4] Later that day, December 1, 2022, AO Henry called Mr. Hartmann, apologized for missing their second followup conference on November 30, 2022, and explained that she had been unexpectedly out of the office. AO Henry rescheduled the second followup conference for December 8, 2022.

On December 8, 2022, the parties held a second followup conference. Mr. Hartmann stated that he had filed his return for taxable year 2019 a month before and his return for taxable year 2020 the week before, and AO Henry requested signed copies of both returns. Mr. Hartmann stated that he was still working on his return for taxable year 2021. Additionally, AO Henry noted that Mr. Hartmann had previously stated that he had filed his return for taxable year 2018 more than a year ago, but that it had not appeared in IRS systems, and she again requested a signed copy of the return for taxable year 2018. AO Henry scheduled a followup call for January 6, 2023.

On January 6, 2023, AO Henry held another call with Mr. Hartmann. Mr. Hartmann indicated that he had sent the return for taxable year 2019 a couple of months before, the return for taxable year 2020 was mailed around the end of December, and the return for taxable year 2021 was almost finished. AO Henry scheduled a followup call for January 17, 2023.

On January 17, 2023, AO Henry held another call with Mr. Hartmann. AO Henry noted that she had not received Mr. Hartmann's return for taxable year 2020, which he had previously stated he mailed at the end of December 2021. Mr. Hartmann stated that he would send a copy of the return for taxable year 2020 the next day via UPS or FedEx. Mr. Hartmann also stated that he was still working on his return for taxable year 2021. AO Henry scheduled another followup call for January 27, 2023.

---

[4] Mr. Hartmann's Form 433–A stated that he had total income of $14,001 per month, comprised of $11,000 in wages and $3,001 in Social Security income. Mr. Hartmann's Form 433–A also stated that he had total expenses of $8,000 per month, consisting of $1,500 for food, clothing, and miscellaneous expenses, $2,500 for housing and utilities, $800 for vehicle ownership costs, $500 for vehicle operating costs, $1,250 for health insurance, $500 for life insurance, and $1,000 for his credit card. The Court notes that the amounts listed on Form 433–A do not total $8,000, but rather $8,050.

**[\*6]**  On January 27, 2023, AO Henry reviewed the CAR and the Integrated Data Retrieval System (IDRS). AO Henry noted in the CAR that, as of that morning, she had not received the requested returns from Mr. Hartmann. AO Henry noted that she had previously requested signed copies of the returns that Mr. Hartmann stated he had already filed for taxable years 2018 and 2019, but they had not been received. Additionally, she noted that she had requested a signed copy of Mr. Hartmann's return for taxable year 2020, but she had not received that return either. She further noted Mr. Hartmann's statement that he was still working on the return for taxable year 2021. AO Henry also noted that Mr. Hartmann had not made any estimated tax payments for taxable year 2021 or 2022.

Additionally, AO Henry concluded that Mr. Hartmann was not eligible for CNC status because even though she had not verified his Form 433–A, Mr. Hartmann had stated that he could pay $6,000 per month towards his outstanding liabilities. Further, AO Henry noted that Mr. Hartmann did not qualify for an IA or an OIC because of his unfiled returns and failure to make estimated tax payments. Finally, AO Henry noted that Mr. Hartmann had stated the penalties were unreasonable, but he did not cite any reasonable cause criteria for abatement.[5]

Later that day, January 27, 2023, AO Henry held a followup call with Mr. Hartmann. AO Henry advised Mr. Hartmann that she had not received anything from him, and Mr. Hartmann provided the tracking number and said that the package should be delivered by the end of the day. AO Henry then informed Mr. Hartmann that Appeals was unable to offer a collection alternative at that time and that the levy action would be sustained. AO Henry explained that an IA and an OIC were not viable collection alternatives because IRS records showed that Mr. Hartmann had not filed any returns for taxable years 2018 through 2021 and thus was not in filing compliance. Further, AO Henry explained that Mr. Hartmann had not made any estimated tax payments for taxable year 2022 despite still working as a lawyer, and thus he was not in compliance with the requirements for estimated tax payments. Finally, AO Henry stated that although Mr. Hartmann maintained he could not

---

[5] An entry in the CAR, dated January 27, 2023, states that on the issue of penalties, "taxpayer stated they were unreasonable but cited no reasonable case [sic] criteria for abatement." The phrase "reasonable case" appears to be a typographical error, and we understand the entry to mean that Mr. Hartmann had not cited any "reasonable cause" criteria for abatement.

**[\*7]** pay the outstanding liability, his Form 433–A showed an ability to pay approximately $6,000 per month. Thus, he was ineligible for CNC status. At the conclusion of the call, AO Henry informed Mr. Hartmann that she would sustain the levy and issue a notice of determination, and that Mr. Hartmann had the right to petition the Tax Court to seek review of the determination.

On March 3, 2023, AO Henry once again reviewed the file and noted in the CAR that IDRS records showed that the returns for taxable years 2018, 2019, 2020, and 2021 remained unfiled.[6] AO Henry had also received a voicemail from Mr. Hartmann inquiring about the notice of determination; AO Henry returned his call and advised that Appeals could not entertain a collection alternative and the notice of determination would be issued within the next two weeks. Thereafter, on March 21, 2023, Appeals Team Manager Eric S. Feinman issued the notice of determination sustaining the proposed levy action.

On April 17, 2023, Mr. Hartmann filed a timely Petition with this Court seeking review of the notice of determination.

*Discussion*

I.    *General Principles*

A.    *Summary Judgment Standard*

Summary judgment serves to "expedite litigation and avoid unnecessary and expensive trials." *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). We may grant summary judgment when there is no genuine dispute of material fact and a decision may be rendered as a matter of law. *See* Rule 121(a)(2); *Sundstrand Corp.*, 98 T.C. at 520. In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. The nonmoving party may not rest upon mere allegations nor denials in their pleadings and must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); *see also Celotex Corp. v. Catrett*,

---

[6] AO Henry also verified that Mr. Hartmann did not file a joint return with his spouse for any year that he had not filed a return (i.e., taxable years 2018, 2019, 2020, and 2021). AO Henry noted that Mr. Hartmann's spouse filed her returns for those years as "married filing separately."

**[\*8]** 477 U.S. 317, 324 (1986). On the basis of the record before the Court, we find that this case is appropriate for summary adjudication.

B.  *The Administrative Record*

The parties did not file a stipulated Administrative Record in this case. Therefore, pursuant to Rule 93(a), on December 8, 2023, respondent filed the Administrative Record and Certificate as to the Genuineness of the Administrative Record (1-R to 20-R), and thereafter, on December 11, 2023, respondent filed the Administrative Record and Certificate as to the Genuineness of the Administrative Record (21-R to 22-R). The Certificates of Genuineness as to the Administrative Record are signed by AO Henry. Mr. Hartmann has not argued that the Administrative Record is incomplete or should be supplemented, nor has he filed a motion to complete or supplement the Administrative Record pursuant to Rule 93(b). Therefore, we accept the Administrative Record filed by respondent.[7]

---

[7] Attached to respondent's Motion for Summary Judgment is Exhibit 23-R, Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, for Mr. Hartmann covering Form 1040 in respect to taxable year 2016. Form 4340 is not part of the Administrative Record.

This Court has previously held that it is not required to apply a limited scope of review and may accept evidence outside the administrative record in a CDP case. *See Robinette v. Commissioner*, 123 T.C. 85, 101 (2004), *rev'd*, 439 F.3d 455 (8th Cir. 2006). However, the U.S. Courts of Appeals for the First, Eighth, and Ninth Circuits have concluded that our review is limited to the administrative record for CDP cases. *See Keller v. Commissioner*, 568 F.3d 710, 718 (9th Cir. 2009), *aff'g in part* T.C. Memo. 2006-166, *and aff'g in part, vacating in part* decisions in related cases; *Murphy v. Commissioner*, 469 F.3d 27, 30–31 (1st Cir. 2006), *aff'g* 125 T.C. 301 (2005); *Robinette v. Commissioner*, 439 F.3d at 461–62. The U.S. Court of Appeals for the Third Circuit, to which this case is presumptively appealable, has not specifically addressed this issue in a precedential opinion. *Snipes v. Commissioner*, T.C. Memo. 2018-184, at \*8–9; *see also Rozday v. Commissioner*, 703 F. App'x 138, 139 (3d Cir. 2017) ("This Court has not addressed the precise question of whether the Tax Court may conduct a trial de novo—at which new evidence, not in the administrative record, may be admitted—when ruling on a petition for review under 26 U.S.C. § 6330(d)(1).").

Whether or not our review is limited to the Administrative Record, this Court has held that "neither *Robinette* . . . nor any other authority precludes the Court's consideration of Form 4340 with respect to each of [the taxpayer's] taxable years . . . in determining whether to grant [the Commissioner's] motion." *Bowman v. Commissioner*, T.C. Memo. 2007-114, 2007 WL 1296775, at \*7, *aff'd per curiam*, 285 F. App'x 309 (8th Cir. 2008); *see also Berglund v. Commissioner*, T.C. Memo. 2015-239, at \*15 n.8. Form 4340 contains the same information that was originally reviewed by Appeals, and therefore we are not precluded from considering Form 4340.

[*9]   C.    *Standard of Review*

This court has jurisdiction to review the administrative determination made by Appeals. § 6330(d)(1). Where the underlying liability was not properly at issue, we will review Appeals' determination for abuse of discretion. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 182 (2000). An abuse of discretion occurs if the Appeals officer exercises discretion "arbitrarily, capriciously, or without sound basis in fact or law." *Woodral v. Commissioner*, 112 T.C. 19, 23 (1999); *see also Giamelli v. Commissioner*, 129 T.C. 107, 111 (2007); *Murphy*, 125 T.C. at 308, 320. Where the underlying tax liability was properly at issue in the CDP hearing, we will review the determination de novo. *Lunsford v. Commissioner*, 117 T.C. 183, 185 (2001) (citing *Goza*, 114 T.C. at 181–82).

Section 6330(c)(2)(B) provides that a taxpayer may challenge his or her underlying tax liability during a CDP hearing if the taxpayer did not receive a statutory notice of deficiency or did not otherwise have a prior opportunity to dispute the underlying tax liability. *See Jackson v. Commissioner*, T.C. Memo. 2022-50, at *6. The term "underlying tax liability" includes any amounts owed by the taxpayer pursuant to the tax laws, including the tax due, any additions to tax or penalties, and statutory interest. *Katz v. Commissioner*, 115 T.C. 329, 338–39 (2000). The Court can only consider a taxpayer's challenge to an issue, including underlying liability, if he or she properly raised that challenge at the administrative hearing. *Giamelli*, 129 T.C. at 115; *see also* Treas. Reg. § 301.6330-1(f)(2), Q&A-F3. An issue is not properly raised at the administrative hearing if the taxpayer fails to request consideration of that issue or if the taxpayer requests consideration but fails to present any evidence after receiving a reasonable opportunity to do so. *Giamelli*, 129 T.C. at 115–16; *Gentile v. Commissioner*, T.C. Memo. 2013-175, at *6–7, *aff'd*, 592 F. App'x 824 (11th Cir. 2014).

Mr. Hartmann did not receive a notice of deficiency and did not otherwise have an opportunity to challenge his underlying liability; and therefore, if he adequately raised the issue before Appeals, the issue of his underlying liability would be properly before the Court. *See* § 6330(c)(2)(B); Treas. Reg. § 301.6330-1(f)(2), Q&A-F3. Mr. Hartmann requested his CDP hearing on Form 12153 wherein he stated that he "[does not] feel that penalties [are] reasonable." However, despite this statement, the record is clear that Mr. Hartmann did not present (and does not contend that he presented) any evidence challenging his

**[\*10]** liability during the CDP hearing. *See Gentile*, T.C. Memo. 2013-175, at \*6–7. The Code specifies the evidence a taxpayer must supply to defeat the addition to tax for the failure to file or the failure to pay. *See* § 6651(a)(1) and (2) (requiring a showing that the taxpayer's failure to file a tax return or to pay tax was "due to reasonable cause and not due to willful neglect"). Mr. Hartmann did not submit any evidence to support his claim that the statutory penalties were unreasonable and therefore failed to raise a proper challenge to his underlying liabilities at the CDP hearing. Accordingly, Mr. Hartmann cannot maintain a challenge to the reasonableness of his penalties in this Court. *See Giamelli*, 129 T.C. at 115; *Gentile*, T.C. Memo. 2013-175, at \*6–7. Furthermore, even if Mr. Hartmann had properly raised the issue during his CDP hearing, he failed to raise the issue in the Petition and therefore has conceded the issue. *See* Rule 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded.").

Accordingly, we will review Appeals' determination for abuse of discretion. In doing so, "[w]e judge the propriety of the [Office of Appeals'] determination . . . on the grounds invoked by the Office of Appeals." *Serna v. Commissioner*, T.C. Memo. 2022-66, at \*8 (quoting *Elkins v. Commissioner*, T.C. Memo. 2020-110, at \*24); *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Antioco v. Commissioner*, T.C. Memo. 2013-35, at \*25 ("Applying Chenery in the CDP context means that we [cannot] uphold a notice of determination on grounds other than those actually relied upon by the Appeals officer."). "[W]e look to the reasons offered in the notice of determination, as further unspooled in the settlement officer's contemporaneous rejection memorandum and case activity notes." *Serna*, T.C. Memo. 2022-66, at \*8; *accord Melasky v. Commissioner*, 151 T.C. 93, 106 (2018) ("[W]e will uphold a notice of determination of less than ideal clarity if the basis for the determination may reasonably be discerned . . . ."), *aff'd*, 803 F. App'x 732 (5th Cir. 2020); *Kasper v. Commissioner*, 150 T.C. 8, 24–25 (2018). "Although we may not accept any *post hoc* rationalizations for agency action provided by the Commissioner's counsel, we may consider any 'contemporaneous explanation of the agency decision' contained in the record." *Kasper*, 150 T.C. at 24–25 (quoting *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 738 (D.C. Cir. 2001)).

**[\*11]** II.     *Analysis*

    A.     *Statutory Framework*

We review AO Henry's determinations for abuse of discretion, and we consider whether she (1) properly verified that the requirements of any applicable law or administrative procedure were met; (2) considered any relevant issues raised by petitioner; and (3) considered whether the proposed collection actions balance the need for the efficient collection of taxes with the legitimate concern of Mr. Hartmann that any collection action be no more intrusive than necessary. *See* § 6330(c)(3); *Sego*, 114 T.C. at 609.

    B.     *Verification Requirement*

First, this Court has authority to review satisfaction of the verification requirement regardless of whether the taxpayer raised that issue at the CDP hearing. *See Hoyle v. Commissioner*, 131 T.C. 197, 202–03 (2008), *supplemented by* 136 T.C. 463 (2011). Mr. Hartmann did not allege in the Petition that AO Henry failed to satisfy this requirement and has set forth no specific facts as to this matter. *See* Rules 121(d), 331(b)(4). In any event, our review of the record shows that AO Henry reviewed the record and properly verified that the requirements of any applicable law or administrative procedure have been met.

    C.     *Issues Raised by the Taxpayer*

Second, at a CDP hearing a taxpayer may raise "any relevant issue relating to the unpaid tax or the proposed levy," including appropriate spousal defenses, challenges to the appropriateness of collection actions, and offers of collection alternatives. *See* § 6330(c)(2)(A). On Form 12153, Mr. Hartmann checked the boxes for the "Offer in Compromise," "Installment Agreement," and "I Cannot Pay Balance" collection alternatives. We will discuss each collection alternative in turn.

    1.     *Cannot Pay Balance (CNC Status)*

CNC status may be available if the taxpayer can demonstrate that, on the basis of his assets, equity, income, and expenses, he has no apparent ability to make payments on the outstanding tax liability. *See Siebert v. Commissioner*, T.C. Memo. 2021-34, at \*31 (citing *Foley v. Commissioner*, T.C. Memo. 2007-242). Under the *Internal Revenue*

[*12] *Manual* (IRM),[8] an account should not be placed in CNC status if the taxpayer has income or equity in assets and enforced collection of the income or assets would not cause hardship. *See* IRM 5.16.1.2.9(1) (Apr. 13, 2021); *see also Siebert*, T.C. Memo. 2021-34, at *31. In determining whether a taxpayer qualifies for CNC status, a settlement officer will calculate a taxpayer's ability to make payments by determining the excess of income over necessary living expenses. *Siebert*, T.C. Memo. 2021-34, at *31 (citing *Rosendale v. Commissioner*, T.C. Memo. 2018-99, at *9).

On November 30, 2022, Appeals received Mr. Hartmann's Form 433–A. Therein, Mr. Hartmann stated that he had total income of $14,001 per month and total expenses of $8,000 per month, and therefore the excess of his income over living expenses demonstrated that he had the ability to pay $6,000 per month under an IA. Therefore, AO Henry concluded that Mr. Hartmann did not qualify for CNC status. Mr. Hartmann's Form 433–A shows an ability to pay $6,000 per month, and therefore we find that it was not an abuse of discretion for AO Henry to conclude that Mr. Hartmann was not eligible for CNC status.

### 2. *Installment Agreement and Offer-In-Compromise*

As noted above, Mr. Hartmann also indicated that he was interested in both the IA and the OIC collection alternatives. AO Henry employed identical reasoning to reject both Mr. Hartmann's IA and OIC, and therefore we will combine our discussion of those determinations.

### a. *Installment Agreement*

Section 6159(a) authorizes the Commissioner to enter into a written agreement allowing a taxpayer to pay a liability in installments if the "agreement will facilitate full or partial collection of such liability." The decision to accept or reject an IA lies within the discretion of the Commissioner. *See Thompson v. Commissioner*, 140 T.C. 173, 179 (2013) (first citing *Kuretski v. Commissioner*, T.C. Memo. 2012-262, at *9, *aff'd*, 755 F.3d 929 (D.C. Cir. 2014); and then citing Treas. Reg. § 301.6159-1(a), (c)(1)(i)). Generally, IAs "should reflect taxpayers' ability to pay on a monthly basis throughout the duration of agreements." IRM 5.14.1.4(4) (Sept. 22, 2021). Namely, the settlement officer should

---

[8] The IRM "does not have the force of law and does not confer rights on taxpayers." *Fargo v. Commissioner*, 447 F.3d 706, 713 (9th Cir. 2006), *aff'g* T.C. Memo. 2004-13.

[*13] analyze a taxpayer's income and allowable expenses to determine the amount of disposable income the taxpayer has available for payment under an IA; this is the minimum amount that a settlement officer may accept under an IA. *See Boulware v. Commissioner*, T.C. Memo. 2014-80, at *29, *aff'd*, 816 F.3d 133 (D.C. Cir. 2016). The IRM also provides that settlement officers are advised to analyze all relevant facts in considering acceptance of an IA, including the taxpayer's compliance history, ability to pay, and equity in assets. IRM 8.22.7.5(5) (Aug. 26, 2020). However, the IRM specifies that a taxpayer must be in both filing and payment compliance before entering into an IA. IRM 5.14.1.4.2(4) (Dec. 23, 2022) ("Taxpayers must be in compliance with all filing and payment requirements prior to approval of IAs."); IRM 5.14.1.4.2(5) ("Do not grant IAs if the taxpayers have not filed all required returns.").

### b. *Offer-In-Compromise*

The Commissioner is authorized to compromise an outstanding tax liability on multiple grounds, including doubt as to liability, doubt as to collectibility, and effective tax administration. *See* § 7122(a); Treas. Reg. § 301.7122-1(b). Generally, an Appeals officer is directed to reject any offer substantially below the taxpayer's reasonable collection potential, unless special circumstances justify acceptance of such an offer. *See Mack v. Commissioner*, T.C. Memo. 2018-54, at *10 (first citing Rev. Proc. 2003-71, § 4.02(2), 2003-2 C.B. 517, 517; and then citing *Johnson v. Commissioner*, 136 T.C. 475, 485–86 (2011), *aff'd per curiam*, 502 F. App'x 1 (D.C. Cir. 2013)). However, the IRM specifies that a taxpayer must be in both filing and payment compliance before the IRS can accept an OIC. IRM 8.22.7.10(5) (Aug. 26, 2020); *see also* IRM 5.8.7.2.2.1 (June 23, 2022) (discussing OIC return for filing compliance); IRM 5.8.7.2.2.2 (June 23, 2022) (discussing OIC return for inadequate estimated or insufficient withholding tax payments).

### c. *AO Henry's Reasoning*

Mr. Hartmann sought both an IA and an OIC during his CDP hearing. AO Henry rejected both collection alternatives on identical grounds, stating that Mr. Hartmann had "not provided the information necessary to consider a collection alternative. In addition, there is no record of estimated tax payments or filing of tax returns. Therefore, it is the determination of Appeals that the proposed levy action is sustained." The determination also stated:

**[*14]** You were advised that no signed copies of tax returns were received by Appeals. You have not made any estimated tax payments and you are still actively self employed as an attorney. . . . A review of [IRS] records shows that the tax years for 2018, 2019, 2020 and 2021 are unfiled. No signed copies of the tax returns have been provided to Appeals. You have not provided a viable collection alternative.

Mr. Hartmann does not contend that he was in compliance with his estimated tax obligations, but he states that "[n]ever once over the above extended time was the issue raised about Petitioner's failure to adequately make estimated tax payments for 2022. If that were the case, the hearing would have been completed on the first day of the initial telephone conference, which was September 20, 2022." The Opposition continues, stating "[t]he primary issue to resolution was securing copies of prior year returns. Same were to be provided to resolve the issues before the Appeals Officer." However, the record does not support Mr. Hartmann's assertion.

The record establishes that AO Henry repeatedly informed Mr. Hartmann that he needed to be in both filing and estimated tax payment compliance to qualify for either an IA or an OIC. In Letter 4837, dated August 4, 2022, AO Henry informed Mr. Hartmann that he needed to provide signed tax returns for the previously unfiled taxable years 2018, 2019, 2020, and 2021. Additionally, the letter also informed Mr. Hartmann that AO Henry needed proof of his estimated tax payments in full for the year to date. When Mr. Hartmann claimed that he had received only one side of the letter, AO Henry discussed with Mr. Harmann the items requested in the letter, including the request for signed copies of tax returns for taxable years 2018, 2019, 2020, and 2021, as well as proof that he had made current estimated tax payments.

Further, the record reflects that during their telephone conference on October 24, 2022, AO Henry once again informed Mr. Hartmann that he needed to be in both filing and estimated tax payment compliance. On January 27, 2023, AO Henry informed Mr. Hartmann that his failure to file the necessary returns, provide signed copies to Appeals, and make estimated tax payments warranted rejecting the IA and the OIC collection alternatives.

In the Opposition, Mr. Hartmann also contends that the termination of the CDP hearing was "unwarranted" because a package containing the first two pages of his return for taxable year 2020 could

[*15] not be delivered to Appeals. However, even construing this fact in favor of Mr. Hartmann does not support the conclusion that Appeals abused its discretion. *See Sundstrand Corp.*, 98 T.C. at 520. Mr. Hartmann had at least six separate calls with AO Henry, and he was afforded numerous extensions of time to file the necessary returns and provide them to Appeals. Despite Mr. Hartmann's repeated assertions that he had filed various tax returns and sent them to AO Henry, the record reflects that no such returns have been filed, and they were not received by Appeals. Indeed, even if Mr. Hartmann sent his return for taxable year 2020 to Appeals and it was undeliverable, as he claims, the record still reflects that AO Henry had not received copies of Mr. Hartmann's returns for taxable years 2018 and 2019, and he had not prepared his return for taxable year 2021. Furthermore, AO Henry also noted in the CAR that as of March 3, 2023, IRS records confirmed that Mr. Hartmann had not filed his tax returns for taxable years 2018, 2019, 2020, and 2021.

A taxpayer's failure to file all required returns, standing alone, is sufficient to justify an Appeals officer's rejection of an IA or an OIC. *Giamelli*, 129 T.C. at 111 (stating that a taxpayer must be current with filing requirements to qualify for an IA); *Balsamo v. Commissioner*, T.C. Memo. 2012-109, 2012 WL 1231985, at *4 (stating that a taxpayer must be current with filing requirements to qualify for an OIC). Therefore, we hold that it was not an abuse of discretion for AO Henry to reject Mr. Hartmann's request for collection alternatives on the basis of his failure to file all required returns. *See Giamelli*, 129 T.C. at 110–11; *Balsamo v. Commissioner*, 2012 WL 1231985, at *4. Additionally, it was not an abuse of discretion for AO Henry to reject Mr. Hartmann's request for collection alternatives on the basis of his repeated failure to provide the requested information to Appeals. *See, e.g.*, *Pough v. Commissioner*, 135 T.C. 344, 351 (2010).

Furthermore, AO Henry offered the alternative ground of Mr. Hartmann's failure to make the required estimated tax payments as justification for rejecting his request for collection alternatives. The record reflects that AO Henry informed Mr. Hartmann of this requirement on multiple occasions, and that he did not make the required estimated tax payments. The requirement of current compliance with estimated tax liabilities as a prerequisite for a collection alternative ensures that the current taxes are being paid and avoids the risk of pyramiding liabilities. *Biggs-Owens v. Commissioner*, T.C. Memo. 2020-113, at *11 (first citing *Ransom v. Commissioner*, T.C. Memo. 2018-211, at *9–10, *aff'd*, 784 F. App'x 800 (D.C. Cir. 2019); and

**[\*16]** then citing *Orum v. Commissioner*, 412 F.3d 819 (7th Cir. 2005), *aff'g* 123 T.C. 1 (2004)).

A taxpayer's failure to make estimated tax payments, standing alone, is sufficient to justify an Appeals officer's rejection of an IA or an OIC. *Giamelli*, 129 T.C. at 111 (stating that a taxpayer must be current with estimated tax payments to qualify for an IA); *Balsamo v. Commissioner*, 2012 WL 1231985, at \*4 (stating that a taxpayer must be current with estimated tax payments to qualify for an OIC). Therefore, we hold that it was not an abuse of discretion for AO Henry to reject Mr. Hartmann's request for a collection alternative on the basis of his failure to make the required estimated tax payments. *See Giamelli*, 129 T.C. at 111–12; *Balsamo v. Commissioner*, 2012 WL 1231985, at \*4.

D.    *Balancing Analysis*

Mr. Hartmann did not allege in the Petition or argue in the Opposition that AO Henry failed to consider "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." *See* § 6330(c)(3)(C). Accordingly, he has conceded the issue. *See* Rule 331(b)(4); *see also Ansley v. Commissioner*, T.C. Memo. 2019-46, at \*19. In any event, AO Henry concluded in the notice of determination that the proposed levy action balanced the need for the efficient collection of taxes with Mr. Hartmann's legitimate concerns about the intrusiveness of such action because he did "not provide[] the information necessary to consider a collection alternative." Further, AO Henry stated that "[a]vailable information indicates that you are not current with your Form 1040 filing requirements and are not making estimated tax payments." We see no abuse of discretion.

III.    *Conclusion*

There are no disputes of material fact, and judgment may be rendered as a matter of law. Finding no abuse of discretion in any respect, we will grant respondent's Motion and sustain Appeals' determination to uphold the proposed levy action to collect Mr. Hartmann's unpaid income tax for taxable year 2016. We have considered all arguments made by the parties and, to the extent they are not addressed herein, we deem them to be moot, irrelevant, or without merit.

**[*17]**  To reflect the foregoing,

*An appropriate order and decision will be entered.*